The opinion of the court was delivered' by
Watkins, J.
This is an action in damages, and the defendant, the Rosetta Gravel, Paving and Improvement Company, is the sole appellant from the verdict of the jury and the judgment of the court a qua thereon based, for the sum of fifteen hundred dollars — the Illinois Central Railroad Company and the New Orleans Belt Railroad Company having been discharged from liability.
*1183 This suit is brought by the plaintiff for the use of his minor child, who suffered serious injuries, as the result of a fall through an open culvert, part of a switch track, connecting the yards of the defendant with the main belt road track on Louisiana avenue, the averment of the petition being that, in the construction of this switch track, the defendant dug a deep trench, or excavation, on the south side of said avenue, in order to obtain earth to make an embankment on which to lay its track, and. same was permitted to remain open, notwithstanding the duty was imposed on the company to restore the street to its original condition.
The further averment is made that, in the laying said switch track from the main line to the company’s private yards in the vicinity, it became necessary to lay it across the said trench or ditch, which is several feet deep and several feet in width, and that the place where it crosses this ditch is near the place where the crossing for pedestrians is constructed. That the only crossings over that ditch are such narrow plank walks as have been placed over it by the people living in the neighborhood for their own convenience. That this switch track over the ditch is laid on an open culvert consisting of cross-ties of about eight inches in diameter, laid about two feet apart and at right angles with the avenue, the culvert being about eight feet in length and on a level with the street.
That the spaces between the cross-ties are not covered or closed, and the culvert is in no way guarded or protected so as to prevent children or other persons from falling into same, as they are liable to do in crossing from one side of the avenue to the other.
That said open culvert is a dangerous trap to wayfarers passing that way.
It is alleged that on or about the 16th of September, 1892, at about 4 o’clock P. m., plaintiff’s daughter, a child of seven years and seven months, left his house on the north side of Louisiana avenue, to go across the street to the home of one of her playmates on the south side of the avenue, as was her custom to do; that taking the most direct route she went diagonally across the street, and on reaching the first place where she could cross the ditch, she attempted to cross over the trestle, fell, and striking against the sharp edge of one of the cross-ties received serious injury.
Grounded on this statement of fact, the charge is made by the plaintiff that, in the construction and maintenance of an open cul *1184 vert, over a deep ditch, on a street in a populous part of a city, in close proximity to the houses of the citizens, and in a place frequented by children of all ages, and used by them as a play-ground, and lying in their customary path across the street, the defendant was guilty of gross negligence, and a wanton disregard of the equal rights of every inhabitant therein to the undisturbed enjoyment of the street.
The only question of fact that the defendant controverts is that with reference to the digging of the trench and leaving it open, the fact being that the ditch had been dug by the city and had been in use by the city as a drain some time prior to the building of the switch track, and thus necessitated the defendant to construct the trestle over it.
This is not denied, but admitted by the plaintiff. Practically all of the other allegations of the petition are undenied.
The question at the threshold is whether this statement makes out a case of negligence on the part of the defendant.
The counsel for the defendant puts the question thus: “ The only point of alleged negligence against the defendant is that the spaces between these broad cross-ties ought to have been filled in so as to make a passage-way over the gutter where none was intended by law, and where people, as a rule, had no business or right to cross.
“ There are street crossings on every street at the crossings. The gutter in the middle of the street is not a normal place to cross, and it is not expected that anybody will cross there.”
Again: ‘‘There was no such passage-way over this gutter at this point before this structure was erected. It was not intended that there ever should be any passage-way at this point. Our structure was not intended as a passage-way for foot passengers, and they had no right to cross the street at this point when it was not contemplated that foot passengers should cross.
“We were, therefore, under no legal obligation to provide a safe passage-way over a place where the law provided none.
* * * * * * * * *
“ If the defendant in this case is guilty of any negligence, then every person who lays a twelve-inch plaDk across a gutter in the city of New Orleans for his own convenience, with the consent of the city, is liable for negligence to any person who undertakes to walk that twelve-inch plank, and missing his footing falls in.”
*1185 The culvert in question was a ditch or drain which had been constructed by the city, and had been in use by the city long prior to the time of the construction of the trestle or culvert in question. That ditch or drain is just such as exist in all parts of the city for like purposes. The switch track turned out from Louisiana avenue in a curve, crossing this ditch in the direction of the defendant’s private grounds. The place of the intersection of this track with the gutter was neither in the street nor in the crossing or foot path on the side of the street. The track was between the two, and impeded the use of neither in any manner. To all appearances the street was left just as free for the use of vehicles, and the sidewalk and crossing of the gutter just as free for the use of pedestrians, as before the defendant’s culvert was constructed over this gutter. Oonsequently there is no causal connection between the two — the structure complained of not being in the street or sidewalk adjacent to the street.
On the contrary, the evidence shows, and the fact is, that there was a good crossing over the gutter, within a few feet of this switch - track crossing, and it was the legal and commonly used foot path for all pedestrians, and the switch track did not lie in the customary path of pedestrians going across Louisiana avenue. Therefore this structure could not have been built “in wanton disregard of the equal rights of every inhabitant thereon, to the enjoyment of the street,” as plaintiff alleges it was.
The case cited by the plaintiff from Hawkins’ Pleas of the Grown (404) was that of digging a ditch in a highway, making a hedge over it, or by laying logs of timber in it.
The case cited from Wood on Nuisances (Sec. 258, 266) 19 L. J. O. P. 195, is that of an unauthorized excavation in or near a highway.
The ease cited from 1 Rorer on Railroads (546) 29 Conn. 434, is that of leaving impassable obstructions, or an open culvert in a public road.
The case cited from 5 Dillon (96) is that of a railroad company making an excavation in a street and leaving it unguarded, whereby children may be injured.
The case from Pierce on Railroads (248) 8 Allen 560, is that of a railroad company causing defects or leaving obstructions in a highway.
The case stated in Wasmer vs. Railroad Company, 80 New York, *1186 212, is one of the company failing to place planking or filling on the side of the rails at a crossing. 65 N. Y. 561.
The case of City of Indianapolis vs. Emmelman, 108 Ind. 530, was that of the city making an excavation in a street, at a place where it knew children living in the vicinity were accustomed to play, and where they had a right to be at all proper times without being ■intruders on the premises.
In our opinion neither of these cases meet the requirements of this case, because of the fact that the structure of the defendant was not built in the street or sidewalk, and'was constructed in a good, substantial manner. There was nothing in the structure within itself to tempt children to it, or to induce them to use it. In putting a crossing over the gutter for its use and convenience, the defendant did no more than the citizens residing in the community did for their convenience and utility.
There are, doubtless, similar gutters in all parts of the city; and if every one who puts a bridge or walk over one of them for use or convenience becomes liable for the happening of any accident or injury that may occur to any chance pedestrian who may use it, at any time, a strange condition of things would in aU likelihood take place.
But the defendant did not act capriciously. It placed this culvert where it did from the sheer necessity of its situation, and in constructing the*switeh track as it did, it apparently did the best thing for the community in not putting same in either the street or sidewalk, and thus avoiding trespassing on the rights of any one, or disregarding the equal rights of every inhabitant of the city to the undisturbed enjoyment of the street and banquette as well as of the crossing.
In thus constructing this switch track crossing, the defendant did not put it !< in a place frequented by children of all ages, and used by themas a play-ground," because their play-ground was on a square of ground near by. This switch track was not built “in their (the children’s) customary path across the street," because the evidence shows and the proof is that the customary path of children, as well as of adults, was over the crossing near by — a covered and safe crossing of the gutter established by the city. Indeed, the proof does not show that the children of the neighborhood who were accustomed to *1187 assemble on the adjacent square for purposes of play had ever been aeustomed to use this switch track crossing at all. On the contrary, we gather from the evidence that this crossing was rarely used in this way and the incident under consideration was exceptional.
Evidently this is not such a case as that plaintiff’s counsel cite from Judson vs. Railroad Company, 29 Conn. 434, as will appear from the following extract from his brief, viz.:
“ A railroad company constructed its road across the main street of a village, about a foot and a half above the level of the street. The street was twelve rods wide, with two traveled paths on each side of the street, and an open common between. The company was required by its charter to restore any highway intersected, so as not to impair its usefulness. The company put the two traveled tracks in proper condition for passing with vehicles, but made no other crossing. About midway between the two paths they constructed a culvert under the timbers of the track to let the water accumulating from rains pass through, which was left uncovered. A person walking across the street upon the railroad track, at a time when the culvert was filled with snow and could not be seen, fell into it and was injured.
“ Held — That the railroad company was liable for the injury.” In their opinion the court ask: “ Why should not the defendants place the whole of the highway, as well as a part of it, in such a condition that it could be safely and conveniently used by the people? Why leave to it anywhere uncovered ditches and culverts, so far rendering it unsafe for foot people to pass along or across it?”
As will appear from the facts recited supra this is a very different case.
The case of McCloughey vs. Finney, 37 An. 27, cited in plaintiff’s brief, is one of an accident happening to a small boy passing along the banquette in front of a feed store on Poydras street, in the city óf New Orleans, from a sack of corn which fell from the top of a pile of corn that had been placed on the banquette by the defendant.
The case of Railroad Company vs. Stout, 17 Wall. 657, is one involving the condition and management of its turn-table, constituting it a dangerous machine.
In O’Connor vs. Railroad Company, 44 An. 339, we held, upon the examination and citation of a great many decisions and opinions of *1188 text writers, that the possessor of lands or tenements is not at liberty to plant in them dangerous instruments, which may seriously injure trespassers; but he is under no duty to keep his premises in a safe condition for others than those whom he invites; and therefore he is not liable to trespassers for injuries they may receive from detects not amounting to traps in such premises.
That was the case of a little child who ha.d resorted, in company with other children, to the yards and premises of the defendant for purposes of play, and was injured by a coal dump of peculiar construction which was left standing on its track.
After quoting with approval from a decision of the Massachusetts court — Coombs vs. New Bedford Co., 102 Mass. 572 — to the effect that “if a person allows a dangerous place to exist in premises occupied by him, he will be responsible for injury caused thereby to any other person entering the premises by his invitation or procurement, express or implied,” we made this inquiry in the O’Connor ease: “ With reference to children of tender years, it may be conceded that they proceeded with due care, but can it be said that the condition of defendant’s fence operated as an ‘invitation or procurement, express or implied?’ ”
In that case a verdict in favor of plaintiff was reversed.
The instant case is easily distinguished from the case of Westerfield vs. Levis, 48 An. 67, as in that case the negligence of the defendants was fully established — they having left a heavy iron roller, with two mules attached thereto, unattended by a driver, on an open, public street; the mules not fastened and the wheels of the roller unlocked.
The petition in this case alleges that the switch track of the defendant was constructed “underand by virtue of Ordinances 4884 and 5822, C. S.,” and consequently same was authorized. And the petition further recites that, in constructing and maintaining an open culvert in a deep ditch in a street in a populous part of the city — one dug or excavated by the company in order to obtain earth to make an embankment — the company was guilty of negligence, but this state of facts is not borne out by the record, as has been already stated.
It is our opinion that the negligence of the company is not made out,- and that the judgment should be reversed.
*1189 It is therefore ordered and decreed that the verdict of the jury and the judgment thereon based be annulled and set aside; and it is further ordered that there be judgment in favor of the defendant, rejecting the plaintiff’s demands in both courts.
Rehearing refused.