(46 South. 317.)

No. 16,963.

BLUM et ux. v. WEATHERFORD & CARY BROS. et al.

(April 13, 1908.)

1. NEGLIGENCE—PLACES ATTRACTIVE TO CHILDREN—TIMBERS ACROSS CANAL—LIABILITY—TEMPORARY CROSSING.

The stringers across the canal were not an inviting place for children. The two timbers were not a continuation of a highway, nor did they connect two streets. They were not intended for pedestrians. They were put there to wheel wheelbarrows across the canal.

2. SAME—NOT INVITING.

The stringers were above a coffer dam. The end of each stringer was about eight feet below the surface of the bank. There was an "incline" or "approach" from the bank to the end of the timbers below.

3. SAME—AN INCLINE OR "RUN."

While in use, defendants had placed a few boards and made a "run" for the wheeling of the wheelbarrows from the bank to the stringers.

4. SAME—THE BOARDS OF THE "RUN."

When the defendants left the work they took these planks away. They left the stringers across the canal.

5. SAME—SOME TIME HAD ELAPSED.

At the date of the accident they had been away from the work of laying pipes about one month and a half.

6. SAME—PRIVATE WAY OVER DRAIN.

The crossing was not public. It was not dangerous. The child who met with the fatal

accident, aged 4½ years, had wandered from her home with a companion about her age.

**7. Same—Not Liable for Accident.**

A person not in any way negligent, not suspecting and without cause to suspect that a child of tender years would leave the playground and attempt to cross on stringers that he placed across a canal, cannot be held liable for damages.

**8. Same—Boards Across Drains.**

If the contrary were the rule, then all boards across a small stream, canal, or drain would have to be removed immediately after they have been used, although not intended as a crossing place and not attractive at all as such. The approaches to them did not offer ready access.

**9. Same—Used Crossing Nearby.**

There was a crossing nearby made with boards laid from bank to bank. It was a convenient crossing as compared with the two pieces of timber.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Fred. Durieve King, Judge.

Action by Edward J. Blum and wife against Weatherford & Cary Bros. and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

George W. Flynn and Michael Dracos Dimitry, for appellants. Morgan & Milner, for appellees.

BREAUX, C. J. This action is for damages in the sum of $10,000.

Plaintiffs lost their little daughter, Ethel, aged 4½ years, on the evening of June 27, 1906, between the hours of 6 and 6:30 o'clock.

She was playing with another little girl, about her age, at or near the St. Louis Canal in the vicinity of North Gayoso street.

One of plaintiff's contentions is that it was a children's playground. Nearby there was across the canal two large boards at the intersection of the canal with Gayoso street. They served as a bridge over which the workmen of defendants rolled their materials in wheelbarrows. These materials were needed in constructing the work at which they were employed.

Plaintiffs' contention is that the defendants had completed their work and had left the place entirely, but, none the less, they neglected to take up the said large pieces across the ditch; that they placed no warning signals, and did nothing else to protect the children of the neighborhood, attracted to the place to play; that the approaches to this bridge were not in any way inclosed, and nothing was placed there to warn persons although there was danger; that this bridge had every appearance of having been placed where it was as a convenience for the public to pass to and fro; that there was no danger before the work had been completed, for the defendants had a watchman to warn persons of the danger; that after they left they discharged the watchman, and gave themselves no concern about the danger.

Plaintiffs aver that they are poor; they had no means to employ a nurse, and that as it is with others in that condition of life they allowed their children to play on the sidewalk and outside at no great distance from their home; that the boards in question attracted the children. It was a place that they would naturally seek to play.

That defendants knew or should have known of the danger, and should have taken steps to prevent accident; that the child left the playground and followed the approaches on the unprotected crossings, and while on it fell over and was found drowned a short distance afterward; that the child greatly suffered.

The following is the story of the bridge from which the little girl fell: The defendants laid pipes on Gayoso street. Their work extended to a drainage canal—i. e., the Toulouse Drainage Canal. In order to lay their pipes under the canal it became necessary to construct a coffer dam across the canal.

This coffer dam consisted of two rows of sheet piling driven across the canal. The piling was cut down and decked or planking was

put over the top to make it as water tight as possible.

It afterward became necessary to make a gang plank over this water dam and cross the canal to get over from one side to the other.

The workmen wheeled concrete and other material over this gangway. It was the purpose for which it had been constructed or placed where it was.

The stringers of the gangway measured 8 inches by 16 inches and 25 feet in length.

These constructions were placed there by the defendant contractors.

We will here state that the end of the stringers did not reach the top of the bank; they were about 8 feet below the top.

There was an approach from the top of the bank to the end of the stringers; it was an incline.

On this incline the defendants had placed boards the better to roll their wheelbarrows over it. When the defendants left they took away the boards on this incline or approach.

After the defendants had completed their work, they removed all of their material and other property, but left the two stringers across the drainage canal. The date of the accident was about one month and a half after they had left.

While the defendants were at work they had a watchman to see after their property.

The impression among some of the witnesses was that this watchman's duty was to warn the public not to cross.

The weight of the evidence shows that the watchman was not particularly placed in charge of the bridge. In this they were mistaken; his duty was while defendants were putting up the work to see to the protection of their tools and materials.

It is also urged that the defendants should have placed a barricade or something on the approach to warn persons not to cross the bridge.

The testimony also shows that it was not the crossing place.

It is in place to state that the contract made by defendants with the sewerage and water board, the contractee, was to lay pipes in certain designated places, and to leave these places as well as the ditches and canal in the same condition as when the defendants began to work. The defendants had the sanction of the local authorities to work at the place.

There was necessity, the evidence shows, for placing the heavy timbers across the canal; the defendants could not have continued their work without the bridge.

It remains for us to determine whether the defendants were negligent.

We judge the little girl fell from the bridge when about midway. We have noted the contention on the part of plaintiffs is that it was part of the playground and that she was attracted there by the works of the defendants.

The testimony does not sustain that contention. There was no playground near the place where she fell, and really there was nothing to invite the child there. She and her little companion descended the incline about eight feet to get over to the bridge.

It required the fancy and activity of a child to find her way to such a place.

We do not hold that in so doing there was contributory negligence on her part which bars her father and mother from recovering judgment, if defendants were negligent. We have seen that she was only 4½ years old.

We do hold that it was not negligence on the part of defendants not to have suspected that the little child might find her way to these stringers and, in attempting to cross the canal to the other side away from her home, fall and be drowned.

There was nothing dangerous in itself about the bridge; nothing to suggest the possibility of an accident such as the fatal accident here.

We have stated that everything placed there by defendants was taken away except the stringers; they were not part of the thoroughfare. They never were intended for any such purpose. It does not suggest itself that there was necessity for placing barricades at the end of the run or approach. And as for the watchman, after the materials were taken away, there remained nothing for him to watch. There was no reason for him to remain there to warn the public from crossing over the pieces of timber which did not connect streets or thoroughfares.

### Another Bridge.

There was a bridge nearby which connected the two banks of the drainage canal and over which it was possible to pass without having to go down an incline or follow a run or approach to stringers, the ends of which are some eight feet below the bank. All persons except children could see that the stringers were not intended for public use. No such bridge would be placed across a drain for the public use.

The fact that the little girl walked to this place and met with the fatal accident is not evidence of negligence of defendants. Bridges and planks are placed across canals and ditches. Those placing them there if not negligent are not liable if any one, including a child of tender years, falls and meets with an accident.

The testimony shows that it was never intended that there should be a passageway at this point. The cause of the accident is too far removed from the defendants to hold them liable.

The principles laid down in the case of Fredericks v. R. R. Co., 46 La. Ann. 1186, 15 South. 413, are directly pertinent. The facts are very similar. In that case the court held that plaintiff could not recover; that bridges or walks would not afford ground for suit if there was no negligence committed in the manner or way that they were placed over the canal or ditch.

Why did they, the defendants, leave the stringers over the drain?

Plaintiffs make a point of the fact that the stringers were left and that this was an act of negligence.

The defense is that the work was not entirely completed. There was necessity for them to return and to use the bridge again.

True, it is shown that they never returned. This in itself would not be ground for condemning them if in leaving the stringers they did nothing more than is usually done by those who place boards and planks or timbers across ditches and canals.

Learned counsel for plaintiff cite several cases with confidence. In the first case cited, Westerfield v. Levis Bros., 43 La. Ann. 66, 9 South. 52, the court refers to the machine which was the cause of the accident as dangerous. There were two mules hitched to it. It was left in the street near plaintiff's residence without an attendant. It was such a machine as would attract an active small boy and tempt him to act as the victim acted in the cited case. Here the crossing was not dangerous. It was not part of the street. There was nothing to give rise to the apprehension that small children would descend too near the water's level and walk on the pieces of timber.

In another case cited, Brinkman v. St. Landry Cotton Oil Co., 118 La. 838, 43 South. 458, an opening was closed by clogging cotton seed which should have been kept clear. Closed as it was, it was a man trap. It was found that there was negligence.

Here everything was in open view. There was nothing specially to be done to prevent an accident.

In the Buechner Case, 112 La. 599, 36 South. 603, 66 L. R. A. 334, 104 Am. St. Rep.

455, there was a hole in a defective public bridge through which plaintiff's son fell.

It is well settled that the public thoroughfare should be kept in a reasonably safe condition. The court found that that had not been done.

In the pending case there was no public bridge, and there was nothing to give rise to the thought that children would leave a safe place to go to these timbers.

If that were made actionable it would become necessary to protect the public from all accidents on canals, gullies, and ditches. Perhaps, to a certain extent there is necessity for this, but even then those who place pieces of timber across these places for useful purposes could only be held liable in case it was evident that by the defective passage owing to negligence an accident was caused.

It is a dictate of the highest humanity to protect children and not to take into account the fault or negligence of the parents who permit them to go on the highway, particularly when the parents are poor and unable to employ a nurse. But it must appear, in order to apply this high principle of humanity, that defendant was at fault.

One might place two boards across a ditch or canal for his own purpose at a particular place. If a child were to find its way to it and fall over and meet with an accident it would not necessarily be cause to mulct him in damages.

If a contractor or others working on the public streets were to place an obstruction on the street or on any of the public approaches to the street there might then be fault or negligence in case of deficiency in warning, for there is a rule against such obstructions. Besides, it is due to the public that there should be no such obstructions.

The drain in this case was public as a drain but not public in the sense that a person becomes liable for placing one or more planks across it for a particular purpose if the ends of the planks are below the top of the banks.

The jury's verdict was against plaintiffs. We have no reason to disturb it.

For reasons stated, it is ordered, adjudged, and decreed that the judgment appealed from is affirmed.