289 So.2d 104 (1974)
Willie Leon JONES et al.
v.
Henry ROBBINS et al.
No. 53451.
Supreme Court of Louisiana.
January 14, 1974.
Rehearing Denied February 15, 1974.
*105 Godfrey & O'Neal, Hodge O'Neal, III, Many, for plaintiffs-applicants.
Colvin, Hunter & Brown, D. Scott Brown, Mansfield, for defendants-respondents.
BARHAM, Justice.
The plaintiff, Willie Leon Jones, is the father of the minor child, Candy Jones. The defendants, Henry Robbins and *106 George Robbins, are the owner and the manager, respectively, of Robbins Gulf Service Station in Mansfield, Louisiana. This delictual action has been instituted to recover damages incurred when four year old Candy suffered burns caused by gasoline she ignited, gasoline which had been obtained from George Robbins at the Robbins Station by her half-sister.
At three o'clock on the afternoon of June 9, 1971, Penny Wyatt, the half-sister of the child who was badly burned, went to the Robbins Service Station and attempted to obtain, in a small glass container, a small quantity of coal oil or gasoline. She was told that gasoline could not be placed in the glass container. The number of return trips by Penny to the station is disputed, but, at any rate, upon the second or third visit to the service station, the six year old Penny carried a plastic container. Penny either purchased four cents worth of gasoline from George Robbins, or was given a small quantity of gasoline which was placed in the plastic container. The defendant, George Robbins, says that, at the time, Penny told him that her mother wanted the gasoline. The child disputes this.
Penny took the plastic container of gasoline back to her yard, where she and other children in the family played, and placed it on the rim of a well. She claimed that she had paint on her hands and that she had obtained the gasoline to wash the paint from her hands. After she had completed her hand-washing with the gasoline, her nine year old sister, Zelma Wyatt, came out of the house nearby and washed her hands in the gasoline, pretending that she had paint on her hands. At about this time (approximately an hour and a half had elapsed from the first attempt to obtain the gasoline) the four year old half-sister of these two children, Penny and Zelma, approached the well where the children had been washing their hands in the gasoline. The four year old half-sister, Candy, had found a match previously. She struck it and threw it into the gasoline, whereupon the contents of the plastic container burst into flame and, as one of the children described it, the flames grabbed Candy's legs and her dress was ignited. Candy ran towards the street, and a young male neighbor, Wayne Howard, and a mature female neighbor, Roxy Ann Brown, caught the child and extinguished the fire by throwing dirt on the burning dress. Roxy Ann Brown then carried Candy to her mother in the house. It was apparent that she was badly burned. The child's father returned from work almost immediately after the occurrence and the child was hurriedly carried to the hospital for treatment. It was then approximately five o'clock.
Under this set of facts, we are required to determine whether the defendants should respond in damages for the injury suffered by the four year old child, who was badly burned when she ignited the gasoline obtained from the defendants by her six year old half-sister.
We first inquire whether there is a causal relationship between the burning of the child, Candy, and the sale of the gasoline by one of the defendants to the six year old half-sister. Was the sale of the gasoline by George Robbins a cause in fact of the burns received by Candy? Did the defendant's act in making a sale of gasoline to a six year old child have something to do with the harm that was suffered by her four year old half-sister? Quickly, and without difficulty, we find that the sale of gasoline by George Robbins to the six year old Penny was a cause in fact of the injuries suffered by Candy. It was this defendant who placed the gasoline in Penny's possession and it was that gasoline which burst into flame and burned the four year old Candy when she threw a match into it.
Next, we are required, before making a determination of negligence and liability, to ascertain whether the defendants owed a legal duty which encompassed the particular risk that caused the harm to *107 Candy. Hill v. Lundin, 260 La. 542, 256 So.2d 620 (1972); Pierre v. Allstate Insurance Co., 257 La. 471, 242 So.2d 821 (1970). Our inquiry in this case is bifurcated. We must first determine if the defendants owed a particular duty not to sell gasoline to a six year old child under the particular facts of this case. Gasoline, while not classified as an ultra hazardous substance, is still a dangerous, highly inflammable, and explosive substance. Even when handled by knowledgeable people, it often causes harm because the special care required with its use is not taken. There is little reason to believe that incompetent persons would treat gasoline differently than they would treat water, milk or other liquids which have no dangerous propensities for exploding or becoming ignited. As a general statement, it may be said that the vendor of gasoline has the duty not to place it in the hands of those who, by reason of age or other disabilities, are unaware of the special propensities of the material, and of the precautionary measures which must be taken when using or storing it. Under the particular facts of this case, when a six year old child comes alone to a service station attendant and procures gasoline, without any adult solicitation or any adult supervision, it may be said that the attendant has breached a duty imposed by a standard of care owed to at least the one to whom he has dispensed the gasoline.
The second part of the question, and the more serious issue, is whether or not this duty not to place gasoline in the hands of an incompetent six year old child encompassed the risk of harm which came to her four year old half-sister. More simply stated, is the risk that Penny's four year old half-sister would throw a lighted match into the gasoline, encompassed within the duty of the attendant not to place the gasoline in the hands of the six year old?
One of the reasons for imposing a duty that gasoline should not be placed in the hands of a child of tender age is the knowledge that such a person is likely to engage in play with the highly flammable and explosive substance. Children have a great propensity for engaging in group play. A small child of six routinely engages in play with children of her own age, or those slightly younger or older. It is a breach of duty to permit another person to use a thing or engage in an activity which originally was controlled by the actor if the actor knows, or should know, that the third person is likely to use the thing or to engage in conduct with it in such a manner as to create an unreasonable risk of harm to others. Restatement of Torts, Second, § 308. Thus, it is a breach of duty to others to place loaded firearms, poisons, or explosive substances in the hands of young children or other mental incompetents. The act of placing the gasoline in the hands of this incompetent child carried with it full realization, or at least a requirement to realize, that the conduct of the small child with the dangerous substance involved an unreasonable risk of harm to others. Particularly included within the risk of harm to others is the fact that, with the expectation of child group play, an easily associated risk is that some other incompetent, by reason of tender age, would misbehave or would misuse the gasoline.[*]
It was totally within the range of the attendant's realization of the consequences *108 of his act that not only might harm result from misuse of the gasoline by the six year old Penny, but that other children of tender age might engage in conduct while playing around and with the gasoline so as to cause it to ignite or explode. The risk that the four year old half-sister would be injured through the possession of the gasoline by the incompetent six year old is exactly the kind of risk which the legal duty we have imposed on the attendant was designed to protect against. The duty not to place gasoline in the hands of an unsupervised incompetent six year old was designed not only to protect that child, but also to protect those whom she would likely expose to the danger of the highly flammable substance. Moreover, it included the risk that another incompetent of tender age might engage in an activity of misuse which would actually ignite the gasoline and create the harm which the four year old Candy here suffered. The defendant, George Robbins, breached the legal duty which was designed to protect against the risk of harm which Candy encountered. He is liable under Civil Code Articles 2315 and 2316 for the damages caused by his fault. Henry Robbins is liable under Civil Code Article 2320 for the damage occasioned by his servant, George Robbins, in the exercise of the function for which he was employed.
The judgments of the district court and the court of appeal are reversed and set aside. The case is remanded to the Court of Appeal for assessment of damages. All costs are cast against the defendants.
SUMMERS, J., dissents and assigns reasons.
CULPEPPER, J., dissents.
SUMMERS, Justice (dissenting).
Willie Leon Jones is the father of the minor Candy Jones. He brings this suit in tort against Henry Robbins and George Robbins, the manager and the owner, respectively, of Robbins' Gulf Service Station in Mansfield, Louisiana. The alleged cause of action arose when four-year-old Candy was burned with gasoline purchased by her six-year-old half-sister Penny Wyatt from Henry Robbins at the service station.
Except for certain details, the principal facts are not seriously disputed. About 3 o'clock on the afternoon of June 9, 1971 six-year-old Penny Wyatt entered her house and asked her mother for Alcorub to remove paint from her hands. When her mother refused she walked down the street to George Pugh's Grocery, hoping to obtain coal oil with which to remove the paint. Pugh did not have coal oil. Penny then crossed the street to Robbins' Service Station located about a block and a half from her house. At the station Penny told Henry Robbins, the operator at the time, that her mother wanted gasoline, but Robbins refused to pour the gasoline into a glass container Penny had for that purpose. He told her to go home and tell her mother a plastic container was needed. Thereupon Penny went back to her house and returned with a larger glass container. Robbins again refused to deliver the gasoline, repeating his demand that her mother send a plastic container. This time when Penny returned to the station she had a plastic container, a one-gallon milk jar. Robbins then poured a small quantity of gasoline into the plastic jar. Penny paid him four cents and, with the gasoline, departed in the direction of her house. Some time later that afternoon Penny placed the plastic jar on the rim of a well in the yard where she lived, "right besides" her house. She then proceeded to wash the paint from her hands. Soon her nine-year-old sister Zelma Wyatt came out of the back door of the house nearby, where their mother Alberta Jones was *109 watching television with older children of the family. Zelma, in a spirit of play or make-believe, pretended paint was on her hands, and she also washed her hands in the gasoline.
Their four-year-old half-sister, Candy Jones, who was playing about the yard, approached Zelma and Penny with a match she had found in the yard and threw it into the gasoline. Immediately the contents burst into flame, igniting Candy's dress. She fled toward the street. As she did so, Roxy Ann Brown, a neighbor standing in the doorway of an adjoining building, observed the child's plight. She dashed to her rescue and, with the help of Wayne Howard, another neighbor, extinguished the fire by throwing dirt on Candy's burning dress.
Roxy Ann then carried Candy to her mother in the house where those present saw that she was badly burned. The child's father, who had just returned from work, hurried her to the hospital for treatment. It was then after five o'clock.
We have no difficulty in finding that the sale of the gasoline by Robbins to the child Penny was a link in the chain of causation leading to Candy's injury and the ensuing damage. The gasoline was placed in Penny's possession, and it was that gasoline which burst into flame and burned Candy when she threw a match into it. But for the sale of the gasoline, the injury would not have occurred.
However, the mere existence of a causal relationship does not establish legal liability for ensuing harm. The question remains whether the conduct has been so significant and important a cause that the defendant should be legally liable. Essentially, the question becomes whether the policy of the law will extend responsibility for the conduct to the consequences which have in fact occurred. Prosser, The Law of Torts, ¶¶ 41, 42 (4th ed. 1971).
It is not enough, therefore, to show that Candy was injured by the gasoline fire. If the harm was not willful, and it was not in this case, to allow recovery we must find as a prerequisite that there had existed a duty owed by Henry Robbins to the injured child. Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972). The injured child was not the child to whom the gasoline was sold and to whom a direct duty was owed. Robbins sold no gas to Candy. In fact, the record does not indicate he was aware of her existence. Even so, if it was reasonably foreseeable on the part of Robbins that these consequences might result to this plaintiff, liability would result.
In my view there is no liability, because there was no negligence toward the injured plaintiff. Negligence is a matter of relation between the parties which must be founded upon the foreseeability of harm to the person in fact injured. Robbins' conduct was not a wrong toward Candy merely because it may have been negligence toward Penny. Candy cannot sue as the vicarious beneficiary of a breach of duty to Penny. Palsgraf v. Long Island R.R., 248 N.Y. 339, 162 N.E. 99 (1928); Blum v. Weatherford & Cary Bros., 121 La. 298, 46 So. 317 (1908).
Nor is it reasonable to suppose that Robbins should be called upon to take precautions for the safety of other neighborhood children. To the contrary, he was free to anticipate that Alberta Jones, the mother, would be fully responsible for the use to which the gasoline was put once Penny returned, especially since he understood it was Alberta who sent the child for the gasoline. And if this is true as to Penny, it was an even more valid assumption as to Alberta's other children, including Candy. Lopes v. Sahuque, 114 La. 1004, 38 So. 810 (1905); Sherman v. Parish of Vermilion, 51 La.Ann. 880, 25 So. 538 (1899).
There is a time factor, too, which further insulates this defendant from legal responsibility. At least one and a half, perhaps two, hours elapsed from the time the gasoline was sold to the moment when Candy threw the match into the container. Assuming the mother did not send the *110 child for the gasoline, there was nevertheless ample opportunity in this time interval for the mother, by the exercise of reasonable diligence and proper supervision over these children of tender years, to discover the gasoline in plain view a few feet from her door, and to protect the children from harm. This inaction and omission on her part, as the party most duty-bound to protect and supervise the children, was an intervening cause shifting the responsibility for the harm from Robbins to Alberta Jones.
This Court should not hold defendant responsible, an hour and a half after he sold the gasoline, for the improper supervision and care of children of tender years a block and a half away at their dwelling where the mother and other family members were present and able to exercise the needed supervision but did not. The trial judge and the Court of Appeal refused to impose this liability. I agree with the result reached by those courts. There is nothing in this record to warrant overturning their carefully considered judgments. The limits of liability are often difficult to find, but there are limits.
I respectfully dissent.
NOTES
[*] There are particular facts in this case which are not necessary to determination of the issue of breach of duty. George Robbins testified that he knew these children well. The house in which they lived and the yard in which they played were near the service station where he worked. He knew there were several children in the family and was familiar with their play activity. He was aware that all of the children, including the four year old Candy, played without adult supervision much of the time. He complained rather bitterly in his testimony that he believed that the mother did not properly supervise the children, therefore, he knew that Penny's activities, as well as those of her playmates, were not under the constant surveillance of a knowledgeable adult. By his own testimony he knew that Penny had young sisters with whom she was in constant contact and with whom she played. The reality of the projected realization, which we have stated should have been in George's mind, is clearly established under the facts and circumstances of this particular case, though not necessary for the determination of the legal issue.