LOTTINGER, Judge.
This is an automobile accident case wherein an automobile left the traveled portion of a highway under construction and struck a piece of construction equipment. From a judgment against the defendants, Barber Brothers Contracting Co., Inc. (Barber Bros.) and the State of Louisiana through the Department of Transportation and Development (DOTD), defendants appeal, and plaintiff has answered the appeal.
FACTS
The accident in question happened on November 10, 1981, at approximately 6:40 p.m. on Louisiana Highway 16 north of Denham Springs in Livingston Parish, Louisiana. At the time of the accident, La. 16 was undergoing an extensive construction project of expanding the highway from two-lanes to four-lanes. Barber Bros, was the contractor for the DOTD. The two outside lanes of the highway had been completed and were being used respectively for north bound and south bound travel. The space between the two completed lanes was under construction for the yet to be completed inside lanes as well as the median. There was a nine (9") inch drop-off between the completed paved outside lane and the area excavated in preparation for the pouring of concrete for the inside lane.
An automobile driven by plaintiffs son, Eugene McManus, Jr., was proceeding in a southerly direction in the south bound completed lane of travel. At a slight curve in the roadway, and immediately after a “LOW SHOULDER” sign, the two left wheels of the McManus automobile left the paved portion of the roadway and fell into the nine (9") inch drop-off. The automobile proceeded in this manner, parallel to the paved roadway, a distance of approximately 60 to 70 feet whereupon it collided with a paving machine parked in the unpaved portion of the south bound lane of travel. Plaintiffs son was killed as a result of the collision. A blood sample drawn from the decedent indicated a blood alcohol content of .20 percent.
Defendants claim that the intoxication of Eugene McManus, Jr. was the sole cause of this accident. Whereas, plaintiff contends that the construction area was not properly marked or signed so as to adequately warn drivers of the hazards of the construction zone.
TRIAL COURT
The trial court in written reasons in part said:
“The evidence indicated that there was a sign indicating ‘low shoulder’ just prior to the point at which the McManus vehicle left the pavement. In addition, there were reflectorized signs along the edge of the completed pavement. The evidence further indicated that the reflective signs were not of the size and shape called for in the construction contract between Barber Brothers and the DOTD. Defendants’ expert, Olin Dart, testified that, while this was true, the signs appeared to be equivalent to the signs called for in the contract. The contract called for signs of a minimum width of two (2") inches by a minimum height of forty-eight (48") inches. Dart testified that, based upon his review of a photograph of the accident scene, that the signs actually in place met an acceptable substitute based upon a traffic control manual wherein such signs would be a minimum of eight (8") to twelve (12") inches wide and a minimum of twenty-four (24") inches high, and mounted with the top a minimum of thirty-six (36") inches above the roadway.
“The Courts have consistently held that the Department of Highways has a duty to warn motorists using the public highways of dangerous conditions, such as curves, by means of warning signs, etc.
Vervik vs. State, Department of Highways, 302 So.2d 895 (Sup.Ct.1974) *1019 Ardoin vs. State, Department of Highways, 333 So.2d 412 (La.App. 3rd Cir.1976).
The deposition of Duaine T. Evans, an expert witness on behalf of plaintiff, testified that the signs marking the low shoulder did not meet the requirements called for in the construction contract for this project. These markers were to be four (4") inches wide by forty-seven (47") inches high and, in a curve, placed every one hundred (100') feet along the curve. The actual signs utilized were only two (2') feet in height. As stated above, Olin Dart, defendants’ expert, testified that the signs actually utilized were an ac-. ceptable substitute. However, his testimony was based on his approximation of the area and measurements of the signs from photographs. Duaine Evans refuted that the signs actually used were an acceptable substitute.
“As to the causation of the accident, Olin Dart attributed the accident to the alcoholic consumption of the driver. Evans attributed the accident to the lack of proper marking, stating that there was a natural tendency for an automobile to drift somewhat in its lane of travel, particularly where a curve was involved and there was a natural centrifugal force pulling the vehicle toward the outside of the curve.
“There was a further contention as to the location of the paving machine in the median between the two traveled lanes. Plaintiff contended that this machine should have been moved off to another location, based upon the provisions of the Manual on Uniform Traffic Control Devices. Mr. Evans testified that Page 6-A-5, Paragraph 5-A, of the manual stated ‘whenever practical, construction equipment, materials and debris should be stored in such a manner as not to be vulnerable to run off the road vehicle impact.’ However, the testimony at trial indicated that it was really not ‘practical’ to move this machine, due to the extreme amounts of time necessary to actually move the machine, replace it and recalibrate it to perform at the proper measurement.
“The final factor is the alcohol consumption of plaintiff’s son. Dr. Cavalier, an expert who evaluated a blood sample, placed the alcoholic content of the blood of plaintiff’s son between .17% and .20%. Obviously, from his testimony, plaintiff’s son would have been somewhat impaired in his operation of the vehicle due to this amount of intoxication, both as to his control of the vehicle and as to his peripheral vision, enabling him to observe the signs marking the low shoulder of the road.”
In rendering judgment, the trial court concluded:
“In the ease at bar, there is no question but that the level of intoxication, between .17% and .20% on the part of plaintiff’s son must have been a substantial contributing factor to the accident and his ultimate death. However, this Court is of the opinion that in an extremely hazardous situation such as the driver faced in this case, consisting of a roadway under construction, a nine (9") inch drop-off in the pavement, a curve, and a piece of heavy construction machinery parked just beyond the curve, that the failure of the defendants to mark the site with at least the type and size of signs called for in the contract, must also have contributed to the accident. Accordingly, this Court will assess plaintiff with 75% of the fault, and defendants with twenty-five (25%) per cent of the fault, contributing to this accident and damages.”
The trial court also rendered judgment in favor of the DOTD against Barber Bros, under an indemnification clause contained in the construction contract between those two parties.
ASSIGNMENTS OF ERROR
In appealing, Barber Bros, alleges:
(1) the trial court was manifestly erroneous in failing to find the decedent completely and totally responsible for the accident;
(2) alternatively, if the court finds that the decedent is not solely responsible for the accident, that the trial court erred in *1020 assessing the defendants with 25% of the fault, and the award should have been substantially less; and
(3) the trial court erred in enforcing the indemnity agreement which was contained in the contract between the Department of Transportation and Development and Barber Brothers Contracting Co., Inc.
DOTD in appealing, alleges the trial court erred:
(1) in finding that the failure of the defendants to mark the sites with at least the type and size of signs called for in the contract also contributed to the accident;
(2) in impliedly placing the burden of proof on defendants; and
(3) in not finding that the sole proximate cause of the accident was the negligence of the decedent.
In answering the appeal, plaintiff contends the trial court erred in its apportionment of fault as between plaintiff and defendants and the amount of damages awarded.
I
Before proceeding to an analysis of this case, the facts of which are really not in dispute, we must observe that no eyewitness to this accident testified. The only witnesses to testify, either in court or by deposition, were the investigating state trooper, an employee of Barber Bros., two accident reconstruction experts, two scientific experts relating to the alcohol blood level, plaintiff, and a disinterested party who heard but did not see the accident. However, from the state trooper’s testimony) gather that there were two passengers in the automobile with the deceased driver at the time of the accident. Perhaps they could have shed some light on the events immediately prior to the automobile running off the highway, but they did not testify. Under the well established rule, it must be presumed that they would have been adverse to plaintiff’s claim.
We also observe, after a careful reading of the transcript, that though the highway curve in question is described as “slight,” there was no further attempt to delineate the severity of the curve. All a trier of fact could possibly know about this curve from the evidence presented was that it was “slight.”
We also observe that this is not another typical shoulder case, inasmuch as the drop-off area was not a shoulder, and this roadway was under construction.
II
In Forest v. State, Louisiana Department of Transportation and Development, 493 So.2d 563, 569 (La.1986), the Supreme Court reaffirmed the utilization of duty-risk analysis in considering asserted negligence, when speaking through Justice Calogero it held:
“This Court has established that, in cases for recovery on the grounds of negligence, the court must consider the asserted negligence utilizing a duty-risk analysis. Dixie Drive It Yourself System, Inc. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962); Pierre v. Allstate Insurance Co., 257 La. 471, 242 So.2d 821 (1970); Hill v. Lundin and Associates, Inc., 260 La. 542, 256 So.2d 620 (1972); Rowe v. Travelers Insurance Co., 253 La. 659, 219 So.2d 486 (1969); Jones v. Robbins, 289 So.2d 104 (La. 1974); Shelton v. Aetna Casualty & Surety Co., 334 So.2d 406 (La.1976); PPG Industries v. Bean Dredging, 447 So.2d 1058 (La.1984). The duty-risk approach as set forth in these cases is essentially an analysis of the following questions in any given case:
Was Defendant's conduct a cause in fact of the accident?
Did defendant owe a legal duty which encompassed the particular risk of harm to which plaintiff was exposed? Did defendant breach that duty?
What damages, if any, did plaintiff sustain?”
We now proceed to an analysis of this case utilizing the duty-risk approach.
III
WAS DEFENDANT’S CONDUCT A CAUSE IN FACT OF THE ACCIDENT?
Any negligence attributed to Barber Bros, and DOTD must consist of the failure *1021 of defendants to mark the site with at least the type and size of signs called for in the construction contract, the failure to note with an appropriate sign a curve, the failure to mark by lights or reflectors the piece of heavy construction equipment, and/or the failure to remove the piece of construction equipment from its proximity to the roadway.
To be a cause-in-fact of harm to another, negligent conduct must be a substantial factor in bringing about that harm. Dixie Drive It Yourself System, Inc. at 302. Stated another way, “[ljegal cause requires a proximate relation between the actions of a defendant and the harm which occurs and such relation must be substantial in character.” Sinitiere v. Lavergne, 391 So.2d 821, 825 (La.1980).
IV
It is undisputed that the signs utilized at the construction site were not as large as the signs called for in the construction contract. The two accident reconstruction experts differed in their opinion as to whether the signs utilized were an acceptable substitute for those called for in the contract. Plaintiffs expert, Duaine Evans, opined that the signs were not acceptable, whereas, Dr. Olin Dart, defendants’ expert, found that they were. Neither expert testified from first hand knowledge. The experts only had available photographs taken the night of the accident, and these photographs are inconclusive as to the size of the signs and the frequency of location. However, the investigating state trooper testified that there was no problem knowing that construction was taking place, and there were reflective signs all along the edge of the roadway. A “LOW SHOULDER” sign was located right before the point where the McManus automobile left the roadway. Plaintiff’s expert agreed that a “LOW SHOULDER” sign would not tell a driver how much of a drop-off existed, but it would tell him something was wrong. We must conclude that even though the signs in use did not meet the requirements of the contract, they were not in and.by themselves a cause in fact of this accident.
It was the alleged deficiency of these signs upon which the trial court relied to render judgment against the defendants. Under the facts as presented in the record, we find the trial court’s conclusion that the deficiency of the signs was a cause in fact of the accident manifestly erroneous and clearly wrong. We could stop our inquiry at this point, however, we proceed forward to determine whether any other alleged acts of negligence were a cause in fact of the accident.
It is argued that it was negligent to fail to mark the curve in question with a sign. Both experts agreed that a vehicle entering a curve has a tendency, without steering correction, to drift off the road. The curve in question has been described as “slight.” As we previously noted, no attempt was made to delineate the degree of this curve. Conceivably, the curve could have been so slight that a sign indicating a curve was not warranted. That is a matter of proof. But more importantly in this case is that the curve was from left to right, and that along the left or drift edge of the curve were markers indicating the edge of the roadway. There is no reason put forward at trial why this driver could not or did not see these markers and maintain control of his automobile. Therefore, we find that the failure to mark this curve with a sign is not a cause in fact of this accident.
Plaintiff places great weight on the failure to mark the piece of construction equipment with lights or reflective markers. In brief, plaintiff argues that the automobile drifted off the roadway due to inadvertence and that the decedent did what any reasonable driver would have done, he maintained control and drove straight after his left wheels dropped off the roadway. Since the construction equipment was not lighted and had no markers, the decedent was not aware of the danger. However, it is clear and undisputed that from the point the automobile left the roadway to its collision with the equipment, it traveled only 60 to 70 feet. The posted speed limit was 45 miles per hour, and the state trooper as *1022 sumed the automobile was traveling that fast. The reaction time alone for a driver traveling at 45 miles per hour is 66 feet. By the time young McManus could have reacted, the collision would have taken place, whether the equipment was lighted or not. Thus, the failure to light or mark the equipment was not a cause in fact of this accident.
Any argument by plaintiff that it was negligent not to remove the equipment from the construction site was adequately answered by the trial court when it held that it was not practical to move the equipment off the construction site.
Thus, under the first inquiry in the duty-risk analysis, we conclude that the alleged negligence on the part of defendants is not a cause in fact of this accident. Not only do we conclude that the individual alleged acts of negligence are not a cause in fact of this accident, but we also conclude that any combination of these alleged acts of negligence is also not a cause in fact of this accident.
DECREE
Therefore, for the above and foregoing reasons, the judgment of the trial court is reversed, and plaintiffs suit is dismissed. Plaintiff is assessed all costs, both in this court and in the trial court.
REVERSED AND RENDERED.