411 So.2d 717 (1982)
Helen B. CHARPENTIER, et al., Plaintiffs-Appellants,
v.
ST. MARTIN PARISH SCHOOL BOARD, et al., Defendant-Appellee.
No. 8674.
Court of Appeal of Louisiana, Third Circuit.
March 10, 1982.
*718 Hornsby & Landry, Lucius A. Hornsby, Jr., Lafayette, for plaintiffs-appellants.
Gachassin & Capretz, Nicholas Gachassin and Carey, Tom Jones, Lafayette, for defendant-appellee.
Before FORET, CUTRER and DOUCET, JJ.
FORET, Judge.
Helen Charpentier and her daughter, Gwen Charpentier Hardy, (plaintiffs) brought this tort action to recover damages for personal injuries suffered by Gwen in two separate falls, one of which occurred at Cecilia High School, and the other on a school bus. Plaintiffs also sought to recover all medical expenses incurred by them for treatment of those injuries. The St. Martin Parish School Board (School Board), the owner and operator of the school, and Valley Alleman (Alleman), the driver of the school bus, were named defendants[1].
The School Board attempted to file a third party demand against Alleman and his liability insurer, Commercial Union Insurance Company (Commercial Union)[2], but *719 the trial court refused to grant leave for it to do so. Plaintiffs entered into a settlement and compromise with the School Board, Alleman, and Commercial Union with respect to their cause of action arising out of Gwen's fall on the school bus. The trial court, on motion of plaintiffs, and pursuant to that settlement and compromise, rendered judgment dismissing, with prejudice, plaintiffs' claims arising out of the school bus incident. Thus, the School Board was the only remaining defendant to this action at the time of trial.
Trial of plaintiffs' action resulted in a judgment in favor of defendant and against plaintiffs, dismissing their action.
Plaintiffs appeal devolutively from the trial court's judgment and raise the following issues:
(1) Whether the trial court committed manifest error in finding that plaintiffs had failed to prove that Gwen's fall at Cecilia High School was caused by a defect in the school's classroom building;
(2) Whether the trial court committed manifest error in finding that plaintiffs had failed to prove that the School Board breached any duty owed Gwen.
Defendant answered this appeal and raises the issue of whether the trial court committed manifest error in denying its motion to traverse Gwen Charpentier Hardy's right to appeal in forma pauperis. Because of our decision herein, this issue is now moot.

FACTS
This action arises out of an accident which occurred on December 20, 1977, when plaintiff, Gwen Charpentier Hardy, fell down a flight of stairs at Cecilia High School, located in St. Martin Parish. Gwen had reported to her homeroom, which was located on the third floor of the classroom building, at the commencement of classes that day. She was informed at that time that she was wanted in the principal's office, which is located on the first floor, and she immediately proceeded down one of the two stairwells in that building to the first floor.
The stairwells were designed in such a manner that the flight of stairs between each floor consisted of a stairway leading to a landing, and then another stairway heading in the opposite direction to the next floor. Gwen had reached the landing between the third and second floors, and tripped when she started down the stairway leading to the second floor. She suffered fairly severe injuries to her left knee, which eventually required surgery to correct.
Plaintiff, Helen Charpentier, instituted this action on December 1, 1978, individually, and as natural tutrix of her then minor daughter, Gwen Charpentier, alleging that Gwen's fall resulted from the School Board's: failure to properly clean steps and walkways during the day when the school building is occupied by students; failure to properly maintain steps located in the school building to insure their safety for children walking down and up said steps; failure to do what they should have done to insure the safety of the steps in a public school building; failure to see what they should have seen, or failing to do what they should have done, or having seen what they should have seen concerning the unsafe conditions of the steps in the school building; and, other acts of negligence to be listed pending discovery. Mrs. Charpentier sought to recover $180,000 in general damages for the injuries suffered by Gwen in both falls (settlement and compromise regarding the fall on the bus having been entered into subsequent to the filing of the petition), and $30,000 for past, present, and future medical expenses incurred for the treatment of those injuries.
Mrs. Charpentier filed a motion to amend her original petition on April 30, 1980, alleging that Gwen had married subsequent to the filing of the original petition, and that Gwen was now emancipated and entitled to pursue her own claim as a party plaintiff. Mrs. Charpentier further alleged that she should be allowed to remain in the action as a party plaintiff to pursue her own claim for the medical expenses she incurred, prior *720 to Gwen's marriage, for the treatment of her injuries. The trial court granted the motion.
The School Board's answer to the original petition consists of a general denial. Its answer to the amended petition also consists of a general denial, but the affirmative defense of contributory negligence is alternatively plead therein. The School Board attempted to file a third party demand against Alleman and Commercial Union shortly before the trial of this action, but long after it had answered plaintiffs' petitions. The trial court refused to grant leave to allow the School Board to file its third party demand finding that it would retard the progress of plaintiffs' main demand.

STRICT LIABILITY AND CAUSATION
Plaintiffs contend that the trial court committed manifest error in finding that they had failed to prove that any defect in the school building caused Gwen's fall down the stairs. Plaintiffs rely on LSA-C.C. Article 2322 to support their cause of action in strict liability against the School Board.
LSA-C.C. Article 2322 provides:
"Art. 2322. Damage caused by ruin of building
Art. 2322. The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction."
Under the provisions of LSA-C.C. Article 2322, several requirements for the imposition of liability under the article must be met:
(1) There must be a building;
(2) The defendant must be its owner, and
(3) There must be a "ruin" caused by a vice in construction or a neglect to repair, which occasions the damage sought to be recovered.
Olsen v. Shell Oil Company, 365 So.2d 1285 (La.1979).
The trial court found that while there were defects in some of the steps of the stairways in the school building, plaintiffs failed to prove that Gwen's fall was caused by any of these defects. Our review of the record (see appendix) establishes that this finding of the trial court is not clearly wrong.

NEGLIGENCE
Plaintiffs also contend that the cause of Gwen's fall was the failure of defendant to properly clean and maintain the stairways at Cecilia High School, and that this constitutes negligent conduct on defendant's part for which it should be held liable in damages to them. Plaintiffs' claim is based on the provisions of LSA-C.C. Articles 2315 and 2316.
The first inquiry in making a determination of liability under these articles is whether any causal relationship exists between the harm suffered by Gwen and the defendant's alleged negligent conduct. Thus, if plaintiffs can show that Gwen probably would not have suffered injuries complained of but for the defendant's conduct, they have carried their burden of proof relative to cause-in-fact. Shelton v. Aetna Casualty & Surety Company, 334 So.2d 406 (La.1976); Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972); Vidrine v. Missouri Farm Association, 339 So.2d 877 (La.App. 3 Cir. 1976), writ denied, 342 So.2d 216 (La.1977); Stewart v. Gibson Products of Natchitoches Parish Louisiana, Inc., 300 So.2d 870 (La.App. 3 Cir. 1974).
In resolving the question of whether an act or acts of a defendant were a cause-in-fact of the harm suffered by a plaintiff, we make no inquiry as to whether the act or acts were unlawful or negligent. We determine only whether they were a substantial factor without which the accident would not have occurred, i.e., whether they had some direct relationship to the accident. Laird v. Travelers Insurance Company, 267 So.2d 714 (La.1972); Pierrotti v. Associated Indemnity Corp., 399 So.2d 679 (La.App. 1 Cir. 1981).
The trial court made no finding regarding cause-in-fact in making its decision. Instead, *721 it assumed that there was gum on the stairs and that this caused Gwen to fall. It then went on to determine the duty owed by defendant towards students such as Gwen and found no breach of this duty. Plaintiffs contend that the trial court committed manifest error in finding no breach of duty by defendant because it used the wrong standard of care (or duty) to judge defendant's action by.
We agree with the trial court's conclusion that defendant was guilty of no negligence for which it should be held liable to plaintiffs for the injuries suffered by Gwen. However, we prefer to base our decision on a finding that plaintiffs failed to prove that any conduct of defendant was a cause-in-fact of Gwen's injuries.
Plaintiffs allege that Gwen's fall resulted from defendant's failure to clean and/or maintain the stairways at Cecilia High School. The evidence shows that the stairways were cleaned every afternoon after school was dismissed. Once classes were dismissed in the afternoon, no students were allowed back in the building until the next morning, unless they had a justifiable reason for re-entering the building.
Calais (the school principal) testified that students were forbidden to chew gum in the classrooms. There were three full-time and one part-time custodians that cleaned the school. Calais had instructed both the custodians and teachers to immediately report to him any problems they observed regarding the cleaning or maintenance of the building. There was testimony from several witnesses indicating that Calais paid particular attention to conditions affecting the cleanliness or maintenance of the school building. See Appendix.
Gwen's accident occurred approximately five minutes after classes had commenced in the morning. There were no students in the building prior to that time, and the school had been cleaned the afternoon before. In all probability, the gum that stuck to Gwen's shoe had been dropped on the stairway by a student on his way to class. In any event, plaintiffs failed to prove that defendant's allegedly negligent conduct even occurred. In fact, the evidence shows that it didn't. Again, see appendix. Having failed to prove this, plaintiffs are unable to prove that any conduct and/or omission of defendant was a cause-in-fact of Gwen's injuries. Thus, there is no need to proceed on to a determination of defendant's duty and whether that duty was breached.
For the above and foregoing reasons, the judgment of the trial court is affirmed.
All costs of this appeal are assessed against plaintiffs-appellants.
AFFIRMED.

APPENDIX
Gwen testified that as she stepped onto either the first or second step below the landing, a piece of gum stuck to her left shoe and something loose on the step. She tried raising her left shoe once, but the gum remained attached to something. She then raised her left shoe a second time and lost her balance, falling forward down the stairs. Gwen was unable to identify exactly what it was that she alleged the gum remained attached to and which was loose on the step. She "guessed" that it was a loose board.
Malcolm Calais, principal of the school at the time of the accident, testified that he checked the stairs where Gwen fell within a half-hour or so after the accident and could find no gum on the stairs. He stated that the steps were covered with rubber matting that could and did become loose at times, and which had to be nailed down. However, he was unable to recall whether the matting located on the steps where Gwen fell was loose that day. He did remember that he found nothing that caused him to be concerned enough to call the maintenance crew to repair.
Mrs. Charpentier testified that she returned to the school the afternoon after the accident and that Calais took her to the place where Gwen fell. She stated that he ran his hand under the rubber matting on the first step below the landing and showed her that the rubber matting on the second *722 step was also loose. Calais testified that he was unable to remember if he had done this.
Allen Stelly, a part-time assistant principal at the school at the time of the accident, testified that he examined the stairs where Gwen fell an hour and a-half to two hours after the accident. He stated that he saw nothing there which might have caused a person to trip and fall. However, he did acknowledge that he did not check the rubber matting covering the steps to see if any were loose.
Gwen denied ever having problems with her left knee, or that she had problems playing basketball because of it, prior to the accident. She did admit that in 1976, she had injured her left "leg" in an accident at the school, and that such injury was in the vicinity of her left knee. Velma Landry, the girls' basketball and softball coach at the school at the time of the accident, testified that plaintiff had tried out for the basketball team, prior to the accident, but was unable to make the team because of a problem with her knees.
Fletcher Sutton, M.D., was accepted by the court as an expert in the field of orthopedic surgery. Dr. Sutton testified that he first saw Gwen on February 13, 1978, approximately one and one-half months after the accident. He stated that on that occasion, "She gave a history of the knee seeming to give way, to have intermittent pain in the knee, especially when going up or down stairs". Dr. Sutton also found that Gwen had a condition which he described as "congenitally knock-kneed". He explained that this condition causes a person such as Gwen to be susceptible to having the knee cap or patella slip out of place when the knee is injured. Dr. Sutton was unable to state, with any degree of probability, whether Gwen's injury to her left knee in 1976 or the injury to that knee sustained in the fall on the stairs caused a partial dislocation of her knee cap, which he eventually repaired through surgery. However, he did believe that the dislocation of her knee cap was the result of some trauma sustained by the knee and that, based on the history Gwen had given him, it was more than likely that the knee was dislocated when she fell on the stairs.
NOTES
[1] Helen Charpentier also named the XYZ Insurance Company, a fictitious entity representing the unknown liability insurer of the St. Martin Parish School Board, and the ABC Insurance Company, a fictitious entity representing the unknown liability insurer of the school bus operated by Valley Alleman, as defendants.
[2] The School Board alleged in its third party demand that the injuries suffered by Gwen were caused solely by her fall on the school bus which resulted from Alleman's own negligence. The School Board sought indemnity from Alleman and Commercial Union for any amounts for which it might be held liable to plaintiffs.