423 So.2d 1291 (1982)
Virginia ALLEN and Lynell Ellis
v.
HOUSING AUTHORITY OF NEW ORLEANS.
No. 13298.
Court of Appeal of Louisiana, Fourth Circuit.
December 1, 1982.
Rehearing Denied January 14, 1983.
*1292 Steven M. Koenig of Heisler & Wysocki, New Orleans, for appellees.
Bradford H. Walker of O'Keefe, O'Keefe & Berrigan, New Orleans, for appellant.
Before GULOTTA, CIACCIO and WARD, JJ.
CIACCIO, Judge.
Plaintiff-appellee, Virginia Allen, rents an apartment in a building owned and operated by the Housing Authority of New Orleans, defendant-appellant. The other plaintiff, Lynell Ellis, is a friend of Ms. Allen. Plaintiffs filed an action to recover for personal injuries alleged to have been caused by defendant's negligence in failing to properly maintain the premises. The trial judge found in favor of plaintiffs and awarded damages. We reverse.
Ms. Allen's apartment has three doorways, viz., a front door, a kitchen door, and a fire door. The fire door could not be opened from the outside and was for emergency exits only. The front door and the kitchen door served the normal ingress and egress activity of the apartment.
The front door of the apartment had been damaged or in disrepair for much of Ms. Allen's tenancy. Housing Authority service records dating from October, 1976, when Ms. Allen was a new tenant, were introduced at trial. These records established a stream of service requests and corresponding services performed regarding the front door. At the time of the incident which gave rise to this suit, the front door could not be opened. Ms. Allen, therefore, was required to use the kitchen door whenever entering or leaving the apartment.
The kitchen door had two locks. One lock was connected to the door knob. The other lock was a dead bolt operated by a key from outside and by a manual switch from inside. Ms. Allen had a key to the door knob lock, but did not have a key to the dead bolt.
On the evening of September 30, 1980, Ms. Allen found herself locked out of her apartment. She and Mr. Ellis fell from the second story ledge of her apartment building while attempting to gain access to her apartment. The injuries for which plaintiffs sue were sustained in this fall.
Prior to the accident, plaintiffs were sitting outside the apartment building chatting with friends. At intervals of approximately fifteen minutes Ms. Allen would leave the group to go to her apartment to tend to some beans she had left cooking on the stove and to check on her three children. The children were ages five, six and eleven.
Since the front door was inoperative Ms. Allen was using the kitchen door entrance to her apartment. Around 10:00 p.m., when she went to check on the beans and the children, Ms. Allen found the kitchen door locked with the dead bolt for which she did not have a key.
Ms. Allen knocked on the door, then telephoned her apartment, but received no response. She also telephoned the project "Hotline" which proved to be equally fruitless.
Ms. Allen sought Mr. Ellis' assistance. They both climbed onto a second story concrete ledge of the apartment building. The ledge was approximately three feet wide with no railing or barricade of any type. Ms. Allen then stood on Mr. Ellis' shoulders in an attempt to reach a window of her *1293 apartment located on the third floor. Ms. Allen lost her grip on the window sill and fell, knocking Mr. Ellis down to the ground with her.
Plaintiffs argue that the "proximate cause" of their injuries was the Housing Authority's failure to properly repair the front door and to give Ms. Allen a key to the dead bolt on the kitchen door. In their brief, plaintiffs contend the lessor is responsible for plaintiffs' injuries because of the lessor's failure to fix the front door and provide a key to, or remove the dead bolt from, the kitchen door.
The trial court found that the Housing Authority was at fault for not repairing the front door and for not providing a key to the dead bolt lock on the kitchen door. The Housing Authority's failure, the court found, was a cause of the accident. The court then found Ms. Allen thirty-five (35%) percent comparatively negligent and Mr. Ellis free from any negligence. The court rendered judgment accordingly.
The trial court apparently reasoned that solely because the Housing Authority's failure to fix the door and provide a key was a logically antecedent cause of plaintiffs' fall, the Housing Authority was to be burdened with liability offset only by any comparative negligence on the part of the plaintiffs. Neither this approach by the trial court nor the "proximate cause" approach espoused by plaintiffs operates as the proper analysis required in this case. In order to determine whether liability exists under the facts of a particular case, the Louisiana Supreme Court has adopted a duty-risk approach. Shelton v. Aetna Casualty and Surety Company, 334 So.2d 406 (La.1976); Hill v. Lundin and Associates, Inc., 260 La. 542, 256 So.2d 620 (1972); Dixie Drive It Yourself Systems v. American Beverage Company, 242 La. 471, 137 So.2d 298 (1962).
The first inquiry in making a determination of liability is whether defendant's alleged wrongful conduct was a cause-in-fact of plaintiffs' injuries. Shelton v. Aetna Casualty and Surety Company, supra; Jones v. Robbins, 289 So.2d 104 (La.1973); Hill v. Lundin and Associates, Inc., supra; Dixie Drive It Yourself Systems v. American Beverage Company, supra, Charpentier v. St. Martin Parish School Board, 411 So.2d 717 (La.App. 3rd Cir.1982). In resolving this question we make no inquiry as to whether the act or acts were unlawful or negligent, nor is it proper at this point to refer to the duty-risk approach policy considerations. We determine only whether the acts of the defendant were a substantial factor without which the accident would not have occurred, i.e., whether they had some direct relationship to the accident. Shelton v. Aetna Casualty and Surety Company, supra; Laird v. Travelers Insurance Company, 263 La. 199, 267 So.2d 714 (1972); Charpentier v. St. Martin Parish School Board, supra; Pierrotti v. Associated Indemnity Corp., 399 So.2d 679 (La.App. 1st Cir.1981).
Every act leading up to an accident cannot be said to be a cause-in-fact. However, when the antecedent acts bring the court, after careful scrutiny of all the facts and circumstances, to a conclusion that more probably than not they were necessary ingredients of the accident, they constitute cause-in-fact. Laird v. Travelers Insurance Company, supra. If the front door of Ms. Allen's apartment had not been inoperative and/or if Ms. Allen would have had a key to the dead bolt on the kitchen door, the accident, more probably than not, would not have occurred. Defendant's failure, therefore, was a cause-in-fact of the accident.
The next step in the analysis was out-lined by the Louisiana Supreme Court in Shelton v. Aetna Casualty and Surety Company, supra, as follows:
"A finding that defendant's conduct was the cause in fact of plaintiff's injury, however, does not establish liability. In addition, we are required to ascertain whether the landowner breached a legal duty imposed to protect against the particular risk involved. Smolinski v. Taulli, 276 So.2d 286 (La.1973); Hill v. Lundin & Associates, Inc., supra; Pierre v. Allstate Insurance Co., 257 La. 471, 242 So.2d 821 (1971); Page v. Green, 306 So.2d 847 (La. App. 2d Cir.1975). In making this determination *1294 the following inquiries must be made: (1) What, if any, duty was owed by the landowner to the plaintiff? (2) Was there a breach of this duty? (3) Was the risk, and harm caused, within the scope of protection afforded by the duty breached? Jones v. Robbins, supra; Hill v. Lundin & Associates, Inc., supra; Thomas v. Hanover Insurance Co., 321 So.2d 30 (La.App. 3d Cir.1975)."
The Housing Authority, as the owner and operator of the apartment building, owned many varied duties to Ms. Allen and her guest. The particular duty relied upon by plaintiffs to support their claim of liability is an alleged duty to repair the front door and to provide a key to the dead bolt on the kitchen door. The Housing Authority, in its brief, concedes that it had the responsibility, i.e. the duty, of maintaining an operative front door. The existence of this particular duty, therefore, is not at issue.
In orally providing its reasons for judgment the trial court implied that the Housing Authority also had a duty to provide Ms. Allen with a key to the dead bolt. The only evidence that Ms. Allen had ever requested a key was her own testimony. The trial judge apparently believed this testimony. Plaintiffs, however, made no showing that the Housing Authority had a duty to provide a key. Nevertheless, for the purposes of this opinion, the trial court's implied finding of a duty will not be disturbed.
Operating on a finding that the Housing Authority had a duty to repair the front door and provide a key to the kitchen door dead bolt, the next inquiry is whether this duty was breached. Housing Authority records corroborated Ms. Allen's testimony at trial that the front door had remained unrepaired and inoperative for some time prior to the accident. Other witnesses also testified to this fact. Uncontradicted testimony also established that Ms. Allen did not have a key to the dead bolt. These factual findings establish that the Housing Authority breached its duty.
The next step of the analysis requires a determination of whether the defendant's duty was designed to protect these plaintiffs from this particular type of harm. There can be no argument that the Housing Authority's duty concerning repair and maintenance of the apartment building was for the protection of tenants, e.g. Ms. Allen, and their guests, e.g. Mr. Ellis. The critical question is whether this duty operated to protect against the particular harm suffered by these plaintiffs. We find that it did not. We, therefore, cannot find defendant liable for plaintiffs' injuries.
While the Housing Authority's duty to repair the front door and provide a key to the dead bolt operated to protect plaintiffs from certain harms, falling from a second story ledge while attempting to climb through a third story window was not one of them.
An extension of the lessor's duty to repair and to maintain is to protect tenants and their guests from any unreasonably dangerous condition on the premises and to either correct the condition or warn of its existence. While the Housing Authority's failure to repair the front door or provide a key to the dead bolt may have been unreasonable, we find that under the facts of this case the condition created by the failure was not unreasonably dangerous. In this sense the Housing Authority did not breach its duty. The duty of a landowner is not to insure against the possibility of an accident on his premises, but rather to act reasonably in view of the probability of injury to others. Shelton v. Aetna Casualty Company, supra.
In conclusion, we find that defendant's failure to fix the door and to provide a key to the dead bolt, was a logically antecedent cause without which plaintiffs probably would not have been harmed, i.e., a cause-in-fact. For the purposes of this case only, we also find that defendant had a duty to repair the front door and provide a key to the dead bolt. Defendant breached this duty. Although this duty was designed to protect these plaintiffs, it was not designed to protect them from the type of harm suffered. Defendant, therefore, will not be held liable.
*1295 For these reasons we find the defendant, Housing Authority, non-negligent and relieved of liability for the injuries sustained when plaintiffs fell. Accordingly, we reverse the judgment of the trial court and enter judgment in favor of the Housing Authority of New Orleans dismissing plaintiffs' suit. Costs are to be paid by plaintiffs-appellees.
REVERSED.