511 So.2d 855 (1987)
Bruce W. MADDEN
v.
Ana Marie SAIK, d/b/a Sciambra's Restaurant and Bar, and Angelina Casualty Company.
No. CA-6297.
Court of Appeal of Louisiana, Fourth Circuit.
August 11, 1987.
Writ Denied November 6, 1987.
*856 Raymond A. Pelleteri, Ward & Clesi, New Orleans, for appellant.
Kathleen C. Cresson, New Orleans, for appellee.
Before CIACCIO, WILLIAMS and ARMSTRONG, JJ.
CIACCIO, Judge.
Defendant appeals a judgment based upon a jury verdict finding defendant 85% at fault for plaintiff's broken ankle. We find that the evidence does not support a finding of any fault on defendant. We, therefore, reverse.
Plaintiff broke his ankle when he stepped down/jumped backwards from a table in defendant's bar and restaurant. The bar was not open for business at the time. Plaintiff was gratuitously assisting his friend, the restaurant manager, defendant-owner's son, in moving about furniture and equipment in anticipation of closing the business.
During a break from the moving activities plaintiff asked the owner her plans for a beer sign hanging in the window. When she said that she planned to sell the sign, plaintiff offered to buy it. She refused his offer to buy, telling him that he could have the sign, just to take it from the window.
In front of the window where the sign hung were two rows of tables pushed together and stacked with chairs  the result of the moving activities in which plaintiff had assisted. Plaintiff testified that he assessed the situation and decided that the best way to get to the sign was across the tops of the tables. He climbed onto the tables, and standing on a table top he removed the sign from the window.
Plaintiff walked with the sign back across the table tops, and handed the sign to his friend who turned to place it on another table. Facing the window plaintiff stepped/jumped backwards from the table to the floor, a vertical drop of 30" to 36". Plaintiff's right foot landed first; when his left foot hit the floor, his left ankle dislocated and fractured.
Plaintiff does not know what caused his ankle to break. At trial he attempted to prove causation as to an uneven section of flooring where one terrazzo square had sunk approximately 5/8" below the level of the adjacent square. Plaintiff does not know if his foot landed on this spot. He did not notice the uneven spot on the day of the fall. Visiting the scene two years later, he surmised that what caused his ankle to break was this uneven spot. Defendant's son had his back turned and did not see plaintiff land, but testified that when he turned to find plaintiff sitting on the floor, he was sitting a foot to a foot-and-a-half from the uneven square edges.
As to the circumstances of the accident, only plaintiff and defendant's son testified.
The jury was given the following interrogatories, and rendered the verdicts noted:

*857 1. Was the Defendant, Ana Marie Saik, the owner of the bar, guilty of negilgence? Yes;
2. Was the negligence of the Defendant, Ana Marie Saik, a proximate cause of the Plaintiff's injuries? Yes;
3. Was the Plaintiff, Bruce Madden, guilty of contributory negligence? Yes;
4. What percentage of fault do you find:

Ana Marie Saik 85%
Bruce Madden 15%

5. What amount of money do you feel would adequately compensate Plaintiff, Bruce Madden, for his injuries? $30,000.
Although to this court both parties argue the issue of defendant's strict liability, the jury received interrogatories addressing only the issue of defendant's negligence. Because this court has jurisdiction to review both law and facts, however, we shall consider the evidence in light of both theories of recovery.
The owner or person having custody of immovable property has a duty to keep such property in a reasonably safe condition. This person must discover any unreasonably dangerous condition on the premises and either correct the condition or warn potential victims of its existence. Farr v. Montgomery Ward and Company, Inc., 430 So.2d 1141 (La.App. 1st Cir. 1983), writ denied 435 So.2d 429 (La. 1983); Haney v. General Host Corporation, 413 So.2d 624 (La.App. 1st Cir. 1982); Albritton v. J. C. Penney Company, Inc., 385 So.2d 549 (La.App. 3rd Cir. 1980). This duty is the same under both the strict liability theory of LSA-C.C. art. 2317 and the negligence liability theory of LSA-C.C. art. 2315. Kent v. Gulf States Utilities Company, 418 So.2d 493 (La.1982); Farr, supra.

There is a difference in proof between these two theories of liability, however, in that under LSA-C.C. art. 2315, the plaintiff must show that the owner or custodian either knew or should have known of the risk, whereas under LSA-C.C. art. 2317, the plaintiff is relieved of proving scienter on the part of the defendant. Kent, supra.

Under either theory of liability, the plaintiff has the burden of proving that: (1) the property which caused the damage was in the custody of the defendant; (2) the property was defective because it had a condition that created an unreasonable risk of harm to persons on the premises; and (3) the defect in the property was a cause-in-fact of the resulting injury. In both negligence and strict liability cases, the reasonableness of the risk is determined by balancing the probability and magnitude of the risk against the utility of the thing. Hunt v. City Stores, Inc., 387 So.2d 585 (La.1980).
Carter v. Board of Supervisors of Louisiana State University, 459 So.2d 1263, 1265-1266 (La.App. 1st Cir.1984), writ denied, 462 So.2d 1248 (La. 1985).
There is no dispute that the premises were in the custody of defendant. She had been leasing the premises for fifteen years. Also, defendant was aware of the uneven spot in the floor. The floor had been in that condition for quite some time. The testimony suggests that when defendant first leased the premises the uneven spot existed.
The first critical issue in this case is whether the uneven spot constitutes a "defect." A "defect" in cases such as this is not a mere imperfection. A "defect", as noted above, is a condition that creates an unreasonable risk of harm to persons on the premises.
The requirement that an injured person in order to recover under Article 2317 or 2322 must prove that the risk from which his damage resulted posed an unreasonable risk of harm places a limitation on a building owner's strict liability. He cannot be held responsible for all injuries resulting from any risk posed by his building, only those caused by an unreasonable risk of harm to others.
Entrevia v. Hood, 427 So.2d 1146, 1149 (La.1983).
Defendant's son admitted that he was aware of the uneven spot, he encountered it each time he mopped the floor. He testified *858 that repairing it had been considered, but that it was located in a low-traffic area and that in fifteen years there had been only a couple of complaints about it. There is no evidence of any prior harm caused by the uneven spot.
Plaintiff relies heavily on the Carter case noted above. In that case plaintiff fell in an uneven spot in a sidewalk. The court held that the record supported the trial judge's conclusion that "the two and one-half inch sunken corner of the sidewalk, unnoticeable to a pedestrian, created an unreasonable risk of harm and was thus defective." 459 So.2d at 1257. We note that the record supporting that conclusion contained expert testimony on the degrees of risk presented by varying differentials in height on walking surfaces. That testimony indicated that a differential of one to two inches would create a "moderate risk"; greater than two inches, of course greater risk; and "a differential of two and one-half inches would require immediate remedial attention." Id. at 1266.
We do not here suggest that expert testimony is required to prove a "defect." It is not. Nor do we intend to draw a line on a scale measuring walking surface irregularity above which we will find a defect and below which we will not. Nor will we require that a condition have caused previous injuries before it will be considered a defect. The unreasonable risk of harm criterion is not a simple rule of law which may be applied mechanically to the facts of a case. It is a concept employed to symbolize the judicial process required by the civil code. The interpreter's duty is to decide which risks are encompassed by the codal obligations from the standpoint of justice and social utility. Entrevia v. Hood, supra.
Nevertheless, the record must support a conclusion that a defect exists. The record must establish more than that a particular condition caused plaintiff's injuries. Entrevia v. Hood, supra. The condition must create an unreasonable risk of harm. Carter v. Board of Supervisors of Louisiana State University, supra. Viewing the evidence in the light most favorable to the plaintiff, the record before us establishes that the floor near where plaintiff landed has a sharp, uneven differential of 5/8". We do not find that this evidence supports a conclusion that the uneven spot created an unreasonable risk of harm. Not every irregularity in a walking surface poses an unreasonable risk of harm. That there is a risk of injury is not enough, the record must show that the risk is unreasonable.
As noted above, the duty to discover and warn of any unreasonably dangerous conditions on the premises is the same under both the strict liability theory and the negligence liability theory. Carter, supra. Having found that the record does not establish that the condition of the floor was unreasonably dangerous, we find that defendant had no duty to warn. The duty of a landowner or occupier is not to insure against the possibility of an accident on his premises, but rather to act reasonably in view of the probability of injury to others. Shelton v. Aetna Casualty & Surety Company, 334 So.2d 406 (La.1976). The record in this case does not establish any probability of injury due to the condition of the floor.
Further, using the duty-risk analysis required by Shelton and other supreme court cases, we find that any duty defendant had concerning the condition of her premises was not meant to protect plaintiff from the possibility of harm when, of his own volition and with premeditation, he stepped backwards off of a table. Compare Allen v. Housing Authority of New Orleans, 423 So.2d 1291 (La.App. 4th Cir. 1982). With respect to this aspect of the analysis and to the extent that it is a defense to strict liability, we find that plaintiff's injury was his fault: free to do as he pleased, he climbed onto the tables and decided to get down by stepping backwards off of the table. This maneuver created significantly more danger of injury than the condition of the floor. The jury's conclusion that plaintiff's fault was only 15% is clearly wrong.
*859 As a final note, we find that the evidence does not establish that the condition of the floor caused plaintiff's injury. Causation, of course, is a necessary element under either theory of recovery. Although he said that he was watching his feet, the table edge, and the floor, plaintiff does not know if he landed on the uneven spot in the floor. No one else saw him land. And defendant's son could only say that when he turned around, he saw plaintiff sitting about a foot to a foot-and-a-half from the uneven spot. Speculation that the uneven spot caused plaintiff to break his ankle cannot satisfy the burden of proof that more probably than not the uneven spot caused the injury.
Although plaintiff focused his case on the condition of the floor, we have reviewed the record for support for any other theory of recovery. We find no suggestion of any alternative facts to support strict liability. Nor is there support for any act or omission by defendant which might suggest negligence.
In short, we find that the record does not support a conclusion that the condition of the floor posed an unreasonable risk of harm, or that defendant had any duty to warn, or that any duty encompassed the risk of this particular harm, or that the condition of the floor caused plaintiff's injury. We find no support of any theory of recovery, strict liability or negligence. Rather, we find the cause of plaintiff's injuries to be his fault for freely choosing to deliberately step or jump backwards off of a table.
Accordingly, the judgment of the district court is reversed, judgment is rendered in favor of defendant against plaintiff, dismissing plaintiff's suit.
REVERSED.