551 So.2d 761 (1989)
Richard RATCLIFF
v.
TOWN OF MANDEVILLE and its Insurer, The Hartford.
No. CA 88 1241.
Court of Appeal of Louisiana, First Circuit.
October 11, 1989.
Writ Denied January 5, 1990.
Maurice LeGardeur/Christine Lozes, Covington, for plaintiff, appellant.
Iddo Pittman, Jr., Hammond, for defendant, appellee.
Before EDWARDS, LANIER and FOIL, JJ.
FOIL, Judge.
This suit arises out of an incident in which plaintiff, Richard Ratcliff, slipped and broke his hip while descending a boat dock located in and owned by the town of Mandeville. Plaintiff sued the town of Mandeville for his injuries, claiming that the dock's defective design and construction caused him to lose his footing.
*762 This is the second time this case comes before this Court. In a previous decision, we affirmed the trial court's granting of the town's motion for summary judgment based on the immunity provided to landowners who make their property available for certain recreational purposes under La. R.S. 9:2791 and 9:2795. Ratcliff v. Town of Mandeville, 491 So.2d 436 (La.App. 1st Cir.1986). The Supreme Court of Louisiana reversed, finding the town of Mandeville is not immune from liability under the facts of this case. Following the case of Landry v. Board of Levee Commissioners of Orleans Levee District, 477 So.2d 672 (La.1985), the Court found said immunity to be inapplicable as the boat dock in this case is located in a recreational area within a populated city, adjacent to a frequently traveled road, and within a stone's throw of a residential area. Thus, the Supreme Court reversed the summary judgment and remanded the case to the district court. Ratcliff v. Town of Mandeville, 502 So.2d 566 (La.1987).
On remand, after trial and taking the matter under advisement, the trial court held the town of Mandeville was not liable under La.Civ.Code art. 2317 or pursuant to a negligence theory. Plaintiff appeals this judgment, presenting the sole issue of whether or not the public docking pier located in and owned by the town of Mandeville was "unreasonably dangerous" to its intended users. In this instance, we find the trial court recognized and applied the correct legal principles and correctly concluded that the defendant's boat dock did not constitute an unreasonable hazard or risk of harm to plaintiff, and we affirm.
At trial, the trial court heard conflicting expert opinions as to the safety of the single platform dock involved in this case. Plaintiff introduced the testimony of Mr. John Kern, a marine surveyor, and Mr. Donald Maginnis, an architect. Both gentlemen measured the slope of the dock to be 20 degrees and opined that this constitutes a defect in design as it violates certain applicable safety codes. Also, both found the presence of algae or a slimy substance on the bottom three boards of the descending ramp. Defendant's expert, Mr. Lamon Moody, is a civil and consulting engineer. He visited the site on numerous occasions and found no algae on the boards of the dock. He measured the angle of descent to be 13 degrees, 48 minutes and 3 seconds. Mr. Moody disagreed about the applicability of the safety codes referred to by Mr. Kern and Mr. Maginnis, and stated he could find no code applicable to this installation.
We give the usual deference to the trial court's assessment of conflicting expert testimony. Moreover, here, the trial judge visited the dock and observed its construction and condition. The court's finding that neither the design of the structure nor its condition presented an unreasonable risk of harm to plaintiff is supported by the record and is not clearly wrong.
In any event, we concur in the result achieved since the record also supports a finding that plaintiff was at fault for his fall and thus, the construction of the dock was not the cause of his injury. The dock involved in this case is part of a boat launching facility located on Bayou Castain near its entrance to Lake Pontchartrain. It consists of a concrete incline which enables vehicles to back boat trailers into the water to launch boats. The dock in question sits in the center of this incline and extends out into the water. It is a wooden platform situated on top of wooden pilings with a wooden ramp that slopes down to meet the concrete incline. Due to tidal fluctuations in the area, sometimes the lower portion of the wooden ramp is covered in water. In extreme conditions, the entire platform is covered. This obviously would account for the occasional presence of algae on the bottom boards of the ramp.
Plaintiff was familiar with this boat launching facility as he had used it some fifteen times before. Plaintiff had been out shrimping all night before the accident. The weather on the morning of the accident was clear. There was no water covering any portion of the wooden ramp. After catching two hundred pounds of slimy shrimp, wearing wet tennis shoes, plaintiff began his descent down the sloping ramp *763 of the dock. He did not look where he was stepping and slipped and fell. This surely constitutes a failure to exercise due care for one's own safety.
Defendant has answered this appeal complaining of the trial judge's assessment of costs, namely, each party is to pay its own costs. Defendant urges that costs should follow the final judgment in favor of the prevailing party, and therefore requests that all costs be assessed to plaintiff.
While it is the general rule to tax the party cast in judgment, the trial judge may assess the costs of a suit in any equitable manner. La.Code Civ.P. art. 1920; Courtney v. Winn-Dixie Louisiana, Inc., 447 So.2d 504, 510 (La.App. 5th Cir.), writ denied, 449 So.2d 1359 (La.1984). Upon review, a trial judge's assessment of costs can be reversed by this court only upon a showing of abuse of discretion. Robertson v. Penn, 472 So.2d 927, 933 (La.App. 1st Cir.), writ denied, 476 So.2d 353 (La.1985). Here, the trial judge did not specify the circumstances upon which the costs decision was based. However, we note that there is no showing that the defendants, who won the case, engaged in conduct which justified an assessment of costs against them. Laughlin v. Breaux, 515 So.2d 480 (La.App. 1st Cir.1987). Accordingly, no costs should be assessed to defendants herein. All costs, including costs of this appeal, are assessed to plaintiff.
In conclusion, and after a thorough review and evaluation of the record, we are convinced the reasons assigned by the trial judge are correct, and we affirm, adopting his reasons as our own, and attach a copy hereto.
AMENDED AND AFFIRMED

REASONS FOR JUDGMENT
This suit arises out of an incident in which plaintiff Richard Ratcliff slipped and fell on the allegedly defective dock of a public boat launch facility owned and controlled by defendant Town of Mandeville, injuring his right hip. Ratcliff filed the instant suit, in which he alleged certain items of damages resulting from the fall, including past and future medical expenses, past and future lost earnings, and pain and suffering. Mandeville then filed a motion for summary judgment based upon the tort immunity provided under LSA-R.S. 9:2791 and 9:2795 to those who open up their property for recreational use. This Court granted the motion and, upon appeal by Ratcliff, the Court of Appeal affirmed. Ratcliff v. Town of Mandeville, 491 So.2d 436 (La.App. 1st Cir.1986). The Louisiana Supreme Court granted a writ of certiorari and/or review, 494 So.2d 1164 (La.1986), and reversed the prior rulings, holding that the Town of Mandeville was not immune from liability under the particular facts of this case. Ratcliff v. Town of Mandeville, 502 So.2d 566 (La.1987). The suit was remanded to this Court for further proceedings. Trial on the merits was conducted on September 18, 1987, at the conclusion of which the Court requested written memoranda from the parties and took the matter under advisement.
The owner or person having custody of immovable property and any improvements thereon has a duty to keep such property in a reasonably safe condition. This duty means that the owner/custodian must discover any unreasonably dangerous condition on the premises and either correct the condition or warn potential victims of its existence. The duty is identical under both the strict liability theory of LSA-Civil Code article 2317 and the negligence liability theory of LSA-Civil Code article 2315. Where the theories of liability diverge is in the proof necessary to establish them; under negligence theory, the plaintiff must show that the defendant either knew or should have known of the risk, whereas under strict liability, the plaintiff need not prove scienter on the part of the owner/custodian. Madden v. Saik, 511 So.2d 855 (La. App. 4th Cir.1987), writ denied 514 So.2d 131 (La.1987); Carter v. Board of Supervisors of Louisiana State University, 459 So.2d 1263, 1265 (La.App. 1st Cir.1984), writ denied 462 So.2d 1248 (La.1985).
However, apart from the scienter issue, the plaintiff's burden of proof under the two theories of liability is substantially the same. To make out a prima facie case *764 under either negligence or strict liability, Ratcliff must prove that: (1) the property that caused the damage was in the custody of the Town of Mandeville; (2) the property, namely the boat dock in question, was defective because it had a design or condition that created an unreasonable risk of harm to persons using the dock; and (3) the defect in the property was a cause-in-fact of the resulting injury. Carter, supra at 1265-66.
There is no question that the boat dock upon which Ratcliff fell and was injured was in fact owned and controlled by the Town of Mandeville. Thus, the first element of plaintiff's cause of action is clearly met. Unfortunately the resolution of plaintiff's second element cannot be so easily determined.
It must be noted at the outset that the applicable standard for both negligence and strict liability is not that of any risk of harm, but only an unreasonable risk of harm. See Entrevia v. Hood, 427 So.2d 1146, 1149-50 (La.1983). In deciding whether a particular situation creates an unreasonable risk of harm, the Court must weigh the particular circumstances as a whole and then make what amounts to a value judgment, keeping in mind the broad range of individual and societal obligations. "The unreasonable risk of harm criterion is not a simple rule of law which may be applied mechanically to the facts of a case. It is a concept employed to symbolize the judicial process required by the civil code. The interpreter's duty is to decide which risks are encompassed by the codal obligations from the standpoint of justice and social utility." Madden, supra at 858. One useful test in arriving at such a determination is to balance the probability and magnitude of the risk against the utility of the thing. Carter, supra at 1266; Lewis v. Oubre, 461 So.2d 523, 525-26 (La.App. 3rd Cir.1984), writs denied 465 So.2d 735 (La. 1985).
In the instant case, the Court has carefully evaluated and weighted all the evidence offered at trial by both parties, including the various expert witnesses. In addition, the Court conducted an ex parte personal inspection of the boat launch and dock. The dock itself, composed of railroad tie-type material, shows signs of weathering and age but is otherwise structurally sound and in good repair. The boat launch has been utilized by a large number of people over the years of its existence, ranging from recreational boatsmen to commercial fishermen. At the time of the slip and fall, Ratcliff was returning from an all-night shrimping expedition in Lake Pontchartrain. He testified that he had used the boat launch a number of times over the course of several years, and that he was an experienced fisherman and shrimper. The ramp portion of the dock upon which Ratcliff slipped is often submerged by fluctuating tide and water level. It must be expected and anticipated, especially by someone familiar with boating, that any such ramp and dock would be slippery, not only from lake water but also from the dew and algae that would unavoidably form. The degree of slant of the ramp was testified to by the experts as being somewhere between 13 and 20 degrees. There was some testimony to the effect that the slanting ramp made easier the task of launching boats at the facility. Although a change in the design of the ramp could be conceived that would certainly decrease the amount of risk of harm, the Court cannot say that the current design is unreasonably dangerous.
The Court concludes that the magnitude and likelihood of harm presented by the design and condition of the dock as a whole does not outweigh the social utility and benefit to society. Thus, the dock is not "defective" in the legal sense in that it does not create an unreasonable risk of harm, at least not in the instance presented by this case. Therefore, since the "unreasonable risk of harm" standard is a necessary element of proof for the plaintiff in both negligence and strict liability, the Court finds that Ratcliff is not entitled to recover under either theory.
Accordingly, the Court finds that judgment should be granted in favor of the defendant, Town of Mandeville, and against the plaintiff, Richard Ratcliff, dismissing *765 plaintiff's petition, each party to bear its own costs of court.
The Court will sign a judgment consistent with these Reasons when such is presented to it.
Covington, Louisiana this 7th day of March, 1988.
 /s/ James R. Strain, Jr.
 James R. Strain Jr., Judge
 Division "F"