KNOLL, Judge,
dissenting.
I agree with the majority that at the time the Bradford Agency prepared this insurance application, Louisiana law did not re *826 quire the insured to select UM coverage on a separate form. See LSA-R.S. 22:1406(D)(l)(a) set forth in the majority-opinion. In the case sub judice, the insurance application under the designated “Uninsured Motorists Insurance” has limits of $25,000 per accident handwritten into the available space. The application also contains the signature of the agent, Ronnie Bradford, verifying that the insurance application was properly completed, and the purported signature of Pitts, Sr., verifying that the statements in the insurance application are complete and true to the best of his knowledge. On these facts, I find that within its four corners, the insurance application complied with Louisiana law. Accordingly, even though Hartford’s internal underwriting policy called for the execution of a separate form for the rejection/selection of uninsured motorists coverage, it was not legally required to secure any additional documents. Therefore, I do not find merit to the Bradford Agency's argument that Hartford would have been liable for the maximum amount of uninsured motorists coverage (equal to liability coverage) regardless of Pitts’ unauthorized signature.
However, for reasons hereinafter stated, I do not agree with the majority’s disposition of the pivotal issue of the principal/agent relationship which purportedly existed between the Bradford Agency and Pitts, with regard to the affixing of Pitts’ signature to the insurance application.
I do not find the record supports that Pitts gave the Bradford Agency authority to select lower limits of uninsured motorists coverage and sign his name on the insurance application. Pitts testified unequivocally that he gave no one permission to sign his name on any insurance forms. Pitts also stated that no one from the Bradford Agency ever discussed his various options of uninsured motorists coverage. Additionally, Ronnie Bradford testified that usually the insured signs the application. However, Bradford freely admitted that, at his direction, his secretary, Linda James, signed Pitts’ name on the insurance form.
The existence of a principal-agent relationship is not presumed, and such a relationship must be clearly proven by the party alleging its existence. Powell v. Shedd, 523 So.2d 924 (La.App. 4th Cir.1988). Based upon the record evidence, I do not find that the Bradford Agency was authorized to select lower uninsured motorists limits for Pitts, and to authorize its secretary to sign Pitts’ name to the application. Therefore, I find that the trial court was manifestly erroneous in its determination to the contrary.
Once it is determined that no agency relationship existed between Pitts and the Bradford Agency with regard to the signing of the insurance application, it is clear that the selection of lower uninsured motorists coverage was invalid since the named insured in the policy did not reject in writing the coverage or select lower limits. LSA-R.S. 22:1406D(l)(a) (1977); Chiasson v. Whitney, 427 So.2d 470 (La.App. 5th Cir.1983), writs denied, 433 So.2d 179, 180, 183 (La.1983). Accordingly, the question of the Bradford Agency’s fault must be addressed. Therefore it is necessary to explore the legal relationship which existed between the Bradford Agency and Hartford.
Ronnie Bradford became a licensed Louisiana insurance agent in 1973 and started working as an agent for Louisiana Farm Bureau. In 1982 he purchased an independent insurance agency in Ferriday, and incorporated the new business under the name Ronnie Bradford Insurance Agency, Inc. Bradford was a part owner and manager of the Bradford Agency. As an independent agency, the Bradford Agency wrote insurance for the Hartford Group, Insurance Company of North America, Fireman’s Fund Group, International Service, and several other surplus line companies.
As an agent for Louisiana Farm Bureau, Bradford wrote various policies of insurance for Ray Pitts, Sr. In January 1984, Pitts contacted the Bradford Agency for the renewal of his business automobile insurance policy. As a result of this inquiry, the Bradford Agency submitted an application for a business auto policy to Hartford on February 2, 1984; the application form *827 was provided by Hartford. The application, purportedly signed by Pitts, requested $500,000 single limit liability coverage per vehicle and $25,000 single limit uninsured motorists coverage per vehicle. The application was received at Hartford’s Metairie office, and in due course the policy was issued as requested in the application with a policy period of 1/27/84 to 1/27/85.
LSA-R.S. 22:1162 defines an insurance broker as “... an individual, partnership or corporation who or which shall, for a commission or brokerage consideration, act for or aid in any manner in negotiating contracts of insurance, or in placing risks or soliciting or effecting insurance as agent for an insured or prospective insured other than himself or itself, and not as a licensed agent of an insurer, and not as an insurance solicitor employed by a licensed agent.”
After carefully reviewing the record, I find that the Bradford Agency was obviously an insurance broker who negotiated between Pitts, Sr. and Hartford. Therefore, I find that under LSA-C.C. Art. 3003 and 3018 potential liability exists on the Bradford Agency’s part for its fault or neglect regarding the submission of Pitts’ application for insurance.
The jurisprudence has held that the elements of a cause of action brought under the provisions of LSA-C.C. Art. 3003 and 3018 are identical to those of a cause of action brought under the provisions of LSA-C.C. Art. 2315. Batiste v. Security Ins. Group, 416 So.2d 279 (La.App. 3rd Cir.1982), writ denied, 421 So.2d 909 (La.1982). Therefore it is necessary to examine the questions of cause-in-fact, existence of a duty owed, breach of that duty, and injury falling within the scope of protection afforded by the duty breached. Ardoin v. Hartford Accident & Indemnity Co., 360 So.2d 1331 (La.1978).
The first inquiry in making a determination of liability is whether any causal relationship exists between the harm suffered and the alleged negligent conduct. Thus if plaintiff can show that the injuries it suffered would not have occurred but for the defendant’s conduct, he has carried his burden of proof relative to cause-in-fact. Charpentier v. St. Martin Parish School Bd., 411 So.2d 717 (La.App. 3rd Cir.1982). In resolving the question of whether an act or acts of defendant were a cause-in-fact of the harm suffered, we determine only whether defendant’s actions were a substantial factor without which the harm would not have occurred. Id.
In the case sub judice, I find, as elaborated earlier herein, that- “but for” Pitts’ unauthorized signature, Hartford would not have been liable for the additional sum of $475,000. Therefore, I find that the Bradford Agency’s actions were a substantial factor without which the harm suffered by Hartford would not have occurred.
I next consider the question of whether the Bradford Agency owed a duty to Hartford. LSA-C.C. Art. 3016 provides that “[t]he broker or intermediary is he who is employed to negotiate a matter between two parties, and who, for that reason, is considered as the mandatory of both.” A broker must observe the same fidelity toward both represented parties, the potential insured as well as the insurer, and not favor one or the other. LSA-C.C. Art. 3017. Because of this double representation the broker is a fiduciary to both parties. Naulty v. Oupac, Inc., 448 So.2d 1322 (La.App. 5th Cir.1984).
In the case sub judice, I find that the Bradford Agency owed a duty to properly submit Pitts’ application of insurance to Hartford. At the end of the insurance application supplied by Hartford, the unauthorized signature of Pitts appears after the following statement:
“I hereby certify that the statements [in the insurance application] are complete and true to the best of my knowledge and belief and are offered as an inducement to the [Hartford] Company to issue the policy for which I hereby apply.”
On the front page of the application, Bradford on behalf of the insurance producer, the Ronnie Bradford Agency, Inc., signed the following statement:
“To the best of my knowledge the Applicant has properly completed and signed this application.”
On the basis of these provisions, it is clear that since the application was submitted as *828 an inducement to Hartford for the issuance of the policy, the Bradford Agency owed a duty to Hartford to comply with the certifications required on the Hartford-supplied application of insurance.
The next question, the breach of a duty, is easily addressed. Ronnie Bradford candidly admitted that the signature of Ray Pitts, Sr. which appears at the end of the insurance application was not signed by Pitts; he forthrightly stated that Pitts’ signature was affixed by the secretary employed by the Bradford Agency pursuant to his instructions; Pitts’ signature at the end of the application was crucial to the issuance of the insurance policy. Furthermore, Bradford’s signature on the application, certifying that the applicant signed the application, when it was known to be false, constitutes a breach of the duty owed Hartford.
The last element, damages which fall within the scope of protection afforded by the duty breached, is likewise answered affirmatively. Because of Pitts’ unauthorized signature, see Chaisson, supra, Hartford’s liability was increased from $25,000 to $475,000.
For these reasons, I respectfully dissent, finding the Bradford Agency and its errors and omissions carrier, National Union Fire Insurance Company, liable to Hartford for the increased sums of UM coverage Hartford paid to the Pitts.