234 So.2d 847 (1970)
Merville N. PITRE et ux.
v.
EMPLOYERS LIABILITY ASSURANCE CORPORATION, Ltd., et al.
No. 7933.
Court of Appeal of Louisiana, First Circuit.
April 13, 1970.
Rehearing Denied May 25, 1970.
*849 Charles J. LeBlanc, Thibodaux, Chester Francipane, Metairie, for appellants.
Johnny X. Allemand, Thibodaux, Samuel C. Gainsburgh, New Orleans, for appellees.
Before LANDRY, SARTAIN and ELLIS, JJ.
LANDRY, Judge.
This appeal by defendants, Employers Liability Assurance Corporation, Ltd. and Maryland Casualty Company, insurers of the Thibodaux Fireman's Fair, is from the judgment of the trial court awarding Mr. and Mrs. Merville N. Pitre damages for the death of their nine and one-half year old son, Anthony Pitre, who died of injuries received when he was struck in the head by the hand of a fair patron winding up to pitch a baseball at a concession stand. The trial court rendered no reasons for judgment. We reverse the judgment and dismiss plaintiffs' actions with prejudice upon finding defendants' insured free of negligence.
Defendants-insurers were sued directly pursuant to LSA-R.S. 22:655. They both third partied David LeBouef, the patron who struck the decedent. The trial court dismissed the third party demands as to LeBouef, rendered judgment in favor of Mr. and Mrs. Pitre in the sum of $14,779.26 and $12,500.00, respectively, and decreed that the awards be paid 80% by Employers and 20% by Maryland. Defendants have not appealed dismissal of their third party demand against LeBouef.
It is conceded Mr. Pitre is a member of the THIBODAUX VOLUNTEER FIRE DEPARTMENT (Fire Department), a non-profit, voluntary, unincorporated association. Defendants maintain the trial court erred in (1) allowing Mr. Pitre to recover even though, as a member of the association, he was an insured under the policies; (2) finding the insured association guilty of negligence in operating the concession; (3) rejecting defendants' pleas of contributory negligence and assumption of risk on the part of plaintiffs and decedent; (4) admitting and considering for limited purposes, evidence of corrective safety measures taken following the accident, and (5) finding that defendants' failure to call as witnesses the firemen who supervised the concession operated as an unfavorable presumption against defendants. Employers individually complains liability was improperly apportioned in that the trial court did not consider Lloyds of London policies (apparently issued in conjunction with Maryland's policy) excess insurance over Maryland's policies, and on this basis, finding $500,000 coverage in addition to Employers $100,000 and fixing the liability at 162/3% for Employers and 831/3% for Maryland. Individually, Maryland asserts the lower court erred in finding that its coverage was primary and not excess, and failing to assess Employers with the entire judgment. Alternatively, Maryland maintains the trial court correctly apportioned liability at 20% to it and 80% to Employers.
The determinative facts of this case are not in dispute. The unfortunate accident occurred at approximately 8:00 P.M., April 29, 1967, at the baseball concession stand operated at the annual Fireman's Fair conducted upon public school grounds in the City of Thibodaux by the Fire Department. The funds raised are used exclusively to purchase equipment for the companies concerned. It appears that the fairs, which have been held for several successive years, are considerable in scope and grow larger each year. The fair is designed to attract people of all ages. It *850 offers a variety of mechanical rides and amusement devices such as a ferris wheel, merry-go-round, and similar contraptions. Additionally, it offers food in the form of hot dogs, hamburgers and similar fare. Drinks include soft drinks, lemonade and beer. From the record, it is safe to infer the enterprise nets the Fire Department approximately $40,000-$45,000 yearly.
The baseball concession stand consisted of two "alleys" at the rear of which was a canopy type cover of canvas or similar material. At the other end, about 20-25 feet distant, was a counter approximately two feet in height. Beneath the canopy was some sort of rack on which were mounted canvas flaps or dolls which could be knocked down if struck with a baseball. Between the counter and canopy ropes were strung to keep spectators from walking between the counter and the dolls. For the sum of 25¢ a participant was furnished three baseballs from a supply kept on the counter. The object of the game was to knock over the "dolls" and win a prize. Participants were required to stand outside the enclosure and throw from beyond the counter. Beyond the counter there were no barriers, ropes or other devices to restrain the thrower or isolate or separate him from spectators or other patrons attending the fair. Two members of the Fire Department operated the concession from posts which they assumed inside the counter near the restraining side ropes. At no time did the attendants leave the alleys to supervise the activity of a patron standing on the opposite side of the counter to pitch balls.
It is conceded that LeBouef, who was seventeen years of age at the time, in the act of "winding up" to pitch a baseball at the concession, struck young Anthony Pitre in the left temple region.
Insofar as concerns the alleged negligence of the Fire Department, as operator or proprietor of the fair, the pivotal question is was there a duty to in some manner warn spectators and participants of the possible dangers inherent in the game, or provide devices to effectively separate and isolate participants from spectators and other participants to prevent injury?
LeBouef's testimony is to the effect he did not see decedent prior to the accident. He acknowledged inadvertently striking the child on the side of the head as he drew his hand behind him to pitch a ball. He recalled that the area near the baseball concession was not particularly crowded. He also observed that there was no expressly designed "pitcher's box" marked off outside the counter to restrict the area from which the participant was required to throw. Neither did he note any type of barrier between participants and mere spectators. The only relevant fact he recalled was that he was throwing overhand when he struck the child.
Nona Marie Pitre, 14 year old sister of the deceased, was with her younger brother when he was struck. She and Anthony had been sent to the baseball concession to retrieve an older brother, Preston, who was watching the players throw at the "dolls". She stated that when she and Anthony reached the stand, they stopped on the side where LeBouef was preparing to throw. After stopping, she yelled to her brother Preston who recognized her and started toward her. She did not notice anyone pitching a ball at the time. She commenced turning to return to her mother and at this time the accident occurred. She estimated there were approximately 25 people in or around the baseball stand, some standing along the sides, others behind the participants at the counter.
Mrs. Pitre's testimony is to the effect she was seated on a bench near the baseball concession. She knew nothing of the accident except that she sent her daughter Nona to fetch Preston and when Nona and Anthony returned, Anthony was injured.
Mr. Pitre, a member of the Fire Department, was engaged in selling hamburgers at the time of the accident. He had no personal knowledge of the events attending his son's injury.
*851 Calvin Weber, general chairman of the 1967 Fireman's Fair, testified concerning the organizational structure of the fair. He stated that the Fire Department is composed of seven companies and that the fair committee consists of seven representatives from each company. He noted that each company is assigned certain stands or concessions to operate. In this instance, the West Thibodaux Company had control of the baseball concession, and the chairman and co-chairman of the baseball stand were Bobby Bergeron and P. W. Lefort, Jr. Mr. Weber also stated that the entire Fair Committee was responsible for all safety measures taken at the fair. He also stated that Mr. Pitre had on former occasions assisted in operating the baseball concession. He acknowledged that after the accident, a meeting was held at which safety measures were discussed for the baseball concession at the next fair.
George Everett Henderson, an expert on conducting fairs, testified he has had twenty years experience in the business, the last sixteen as Concessions Manager for Playland Amusements, Incorporated, Pontchartrain Beach, New Orleans. As manager, he is in charge of all concessions at Pontchartrain Beach including design, construction and safety aspects. He has operated approximately 48 similar baseball concessions or stands and at present is operating three such concessions. He noted that safety is not considered as large a problem with concessions of this type as in the case of mechanical rides and amusement devices. He provided such stands with baffles at the end where the targets are situated. The baffles prevented baseballs from ricocheting since experience proved ricocheting balls were the greatest hazard in operating a concession of this nature. His visits to hundreds of similar concessions at other fairs showed the only significant hazard was that incident to richocheting baseballs. He has never seen or used restraining ropes or barriers to isolate participants from spectators. He conceded that professional fairs draw a line on the ground six feet from the counter and require participants to stand within this line when throwing. He explained that since the thrower must cast down at the targets, the closer the participant is to the target, the less accurate he is because of the trajectory involved at a short distance. The farther away the thrower stands, the more level his trajectory and the greater the accuracy. He noted that the six foot restraining line used by professionals has no relation to safety. He further noted that insurance company safety engineers have always approved the operation of his baseball stands without barriers and even though his employees remain inside the concession area as did defendant's operators in the instant case. He also stated that, as a matter of policy, he did not permit very young persons to patronize such a game because they lacked physical strength to knock over the dolls.
Over defendants' objection, the trial court permitted A. J. Naquin, Fire Chief, to testify that the day following the accident, the baseball concession was roped off as a safety precaution.
Admission of this type of evidence was erroneous. Evidence of corrections or improvements following an accident to prevent recurrence of similar incidents is not admissible. Insofar as such corrections tend to constitute an admission of guilt or negligence, they serve to deter one from improving his premises. Givens v. DeSoto Bldg. Co. et al., 156 La. 377, 100 So. 534.
The mere fact that an accident occurs, absent a res ipsa loquitur situation, does not give rise to even a presumption of negligence. Minton v. Continental Insurance Company, La.App., 110 So.2d 789.
Plaintiff in a tort action must establish his case by a clear preponderance of evidence. Perkins v. Texas and New Orleans Railroad Company, 243 La. 829, 147 So.2d 646. An indispensable element that plaintiff must establish in a claim for negligent injuring is the existence of a *852 duty by defendant to protect plaintiff from injury. Lanza Enterprises, Inc. v. Continental Ins. Co., La.App., 129 So.2d 91; Trahan v. Liberty Mutual Insurance Company, La.App., 188 So.2d 435; Payton v. St. John, La.App., 188 So.2d 647.
Fault is determined by asking the question: How would a reasonably prudent individual have acted or what precautions would he have taken under the same or similar circumstances? Tucker v. Travelers Insurance Company, La.App., 160 So.2d 440. Negligent conduct is determined in the light of the facts and environmental circumstances of each case. Zorick v. Maryland Casualty Company, La.App., 172 So.2d 706.
Failure to take every precaution against all foreseeable injury to another does not necessarily constitute negligence. On the contrary, negligence requires that the risk be both foreseeable and unreasonable. Turner v. Caddo Parish School Board, 252 La. 810, 214 So.2d 153. Failure to take a particular precaution to guard against injury to another in connection with a risk constitutes negligence only where it appears such a precaution would have been undertaken under the circumstances by a reasonably prudent individual. Turner v. School Board, above. One is bound to protect against what usually happens or what is likely to happen under the circumstances. Wilson v. Scurlock Oil Co., La.App., 126 So.2d 429. Ordinary care requires only that precautions be taken against occurrences that can and should be foreseen; it does not require that one anticipate unusual and improbable, though entirely possible happenings. Rouseo v. Gauche Connor Co., 8 Orleans App. 216.
Plaintiffs, relying principally upon Gilliam v. Serrano, 162 So.2d 32, maintain that the Fire Department owed the affirmative duty to either warn or guard participants and spectators against the inherent danger of being struck by a person winding up to throw at the targets. It is contended that the attendants should have stayed on the outside of the counter to keep spectators at a safe distance from participants. It is also argued that restraining ropes or other barriers could have effectively isolated pitchers from spectators and other participants.
We find Gilliam, above, clearly distinguishable from the case at hand. In Gilliam, the fair operators were operating a mechanical amusement device at a "fair" designed expressly to attract children of pre-school age. In essence, Gilliam holds that where pre-school children are concerned, the operator of amusement devices owes a high degree of care. With this general rule, we are in accord. To hold as plaintiffs urge herein would make operators of amusement devices insurers of the safety of their patrons. Such is not the law. The operator is required only to exercise that degree of care commensurate with foreseeable dangers inherent under the circumstances, including the age bracket of his anticipated patrons. Plaintiff has not shown that children of decedent's age were permitted to participate in the baseball concession involved herein. Mr. Henderson's testimony justifies the assumption that persons of decedent's age were not allowed to indulge in this particular sport.
It is well settled that custom and usage are properly considered in determining whether sufficient care has been taken in a particular instance, but custom and usage are not controlling or decisive since the customary way of doing a thing may be negligent and may create a false standard of care. Harris Drilling Co. v. Delafield, 222 La. 416, 62 So.2d 627. Here the record shows it is customary only to protect against ricocheting balls. It is not normal or customary to station attendants outside the enclosed concession area nor is it standard procedure to rope off or barricade the pitching area. Although the custom shown does not conclusively establish that the Fire Department discharged its duty to decedent, it is one factor to be considered in determining whether a reasonably *853 prudent person would or should have foreseen the danger of injury from the source encountered here. It does not appear that the same or a similar accident had previously occurred. We find that there were no latent or hidden dangers to spectators in the throwing of baseballs under the circumstances shown. The pitching was conducted openly, in full view of all who watched. It involved forcibly throwing an object which could produce injury if misdirected, but the injury here did not result in their manner. Such danger as attended a participant stepping back, winding up to throw and actually throwing a ball was clearly visible to all.
We find that the rule announced in Turner v. Caddo Parish School Board, 252 La. 810, 214 So.2d 153, is pertinent to the case at hand. There an adult spectator at a high school football game was injured when several players fell into the crowd of fans present. No physical barriers separated players from spectators. Chalk lines on the ground around the perimeter of the field indicated where spectators were to sit or stand.
In considering defendant's duty to take precautions against injury to patrons or spectators, the court stated:
"As has been pointed out by our Courts of Appeal, where the vast majority of tort actions are heard on review, failure to take every precaution against all foreseeable injury to another does not necessarily constitute negligence. That would amount to making one an insurer of the other's safety. The risk involved must be both foreseeable and unreasonable. And failure to perform any given act to guard against injury to another in connection with the risk constitutes negligence only when it appears that the performance of such act would have been undertaken, under the circumstances, by the reasonably prudent person.
As was aptly pointed out in Goff v. Carlino et al., La.App., 181 So.2d 426, certiorari denied, which was approved in Miller v. Southern Farm Bureau Casualty Insurance Company, La.App., 189 So. 2d 463, certiorari denied, `Negligence is conduct which creates an unreasonable risk of foreseeable harm to others. * * * The risk of foreseeable harm to others is unreasonable so as to be negligence if the magnitude of the risk created outweighs the utility or social value of the conduct creating it; in this respect consideration is given, inter alia, to the probability or extent of the harm to others threatened by the risk.'"
The national popularity of baseball as a sport warrants the conclusion that even a nine and one-half year old lad is aware of such danger as attends his remaining in proximity to persons throwing baseballs. Although the type of accident in question is one that was perhaps foreseeable, and certainly of a type possible, its probability of occurrence was not so great as to render the operators negligent for failing to take measures to prevent its happening. As stated above, failure to take precautions does not constitute negligence unless the danger is both foreseeable and unreasonable. Here, such danger as existed was not unreasonable. Here, a nonprofit organization, performing a vital public service, took such precaution as was deemed advisable by persons engaged in a similar enterprise as a business. In this instance, we find that the risk of foreseeable harm to others, and the probability of an accident of this nature occurring is outweighed by the utility of purpose for which the enterprise was conducted.
We find therefore that the trial court erred in finding that, as a matter of law, the Fire Department was negligent in this instance.
The conclusions reached obviate the necessity of considering the numerous other issues raised by appellants.
It is ordered, adjudged and decreed that the judgment of the trial court be and the same is hereby reversed and set aside and *854 judgment rendered herein in favor of defendants, Employers Liability Assurance Corporation and Maryland Casualty Company, rejecting and dismissing the demands of plaintiffs Merville N. Pitre and Florence Theresa Barrilleaux Pitre, with prejudice, at plaintiffs' cost.
Reversed and rendered.