541 So.2d 261 (1989)
Albert PERRON
v.
AMBASSADOR INSURANCE COMPANY and Skate Country, Inc.
No. 88-CA-1321.
Court of Appeal of Louisiana, Fourth Circuit.
March 14, 1989.
Writ Denied May 12, 1989.
*262 Alan F. Schoenberger, New Orleans, for plaintiff/appellee.
McNeil J. Kemmerly, Drew Ryan Ballina, Berrigan, Danielson, Litchfield, Olsen & Schonekas, New Orleans, for defendant/appellant.
Before SCHOTT, C.J., and ARMSTRONG and PLOTKIN, JJ.
PLOTKIN, Judge.
Defendant, Skate Country, Inc., appeals the trial court's judgment in favor of plaintiff Albert Perron for personal injuries suffered when Perron allegedly fell on the skate floor. We reverse the trial court's ruling.

FACTS
Perron's fall allegedly occurred when he tripped over rubber "toe stop", a part of a skate, at Skate Country's roller skating rink on July 17, 1982. The "toe stop" is a rubber device that attaches to the front of the skate by means of a bolt. The skater uses it to slow down or stop by leaning his skate forward on the "toe stop."
Perron testified that he was an experienced roller-skater. He would go skating on a weekly basis and at times would celebrate birthdays with a party at the skating rink. He also testified that since the accident he had returned to the skating rink for family outings.
On the day of the accident, the plaintiff entered the skating rink with his daughter, his son, his wife, and his nephew. He and his family rented skates and proceeded to skate during the morning two-hour children's session. Perron testified that, as he was rolling around the rink at a slow pace while holding his young daughter's hand, he hit an object and landed on both knees. He narrated further that when he stood up he noticed that he had no toe stop on his right skate. His nine-year-old nephew, although not a witness to the fall, testified that he saw his uncle on the ground and saw the toe stop roll off from under him. He presented Perron with a toe stop. Perron testified that this caused him to conclude that the toe stop had fallen off his right skate. Perron testified that although this was his original conclusion, he later found out that the toe stop was from a juvenile's skate and therefore could not have fallen off his shoe.
After the accident, the plaintiff returned his skates and left Skate Country with his *263 family. He did not notify Skate Country of his accident before leaving and he took the toe stop with him when he left. Wanda Perron, plaintiff's wife, called Skate Country later that afternoon to report the accident, claiming that it was caused by a "toe stop" that fell off her husband's shoe.
Mr. Snellstrom, general manager of Skate Country testified that after Mrs. Perron's phone call, he and his employees checked the skates to see if there was one that had a missing toe stop. Snellstrom testified that they examined all of the skates in Perron's size and one size above and one size below. They found none of them to be defective.
At trial the court found that Perron did fall when he was skating on July 17, 1982. The court further concluded that the "toe stop" was on the floor at the time of Perron's fall and that it was a cause-in-fact of Perron's injuries. The court stated that the very nature of the business prevented the defendant from being exonerated in this case. The court awarded $891.00 in special damages and $10,000 in general damages, finding that Perron was disabled between 13 and 15 months.

LIABILITY
The appellant contends that the trial court erred in applying a legal standard greater than ordinary negligence in holding defendant liable. Although the trial court specifically stated that the defendant is not being held to a strict liability standard, the judge's comments concerning liability based on "the nature of the business" are in fact tantamount to application of a strict liability standard. Application of this standard was erroneous. It is well established in Louisiana law that operators of amusement facilities are not the insurers of their patrons' safety, but are liable for injuries only if they are guilty of negligence. Heard v. Bonnie and Clyde's of Hattiesburg, Inc., 501 So.2d 1003 (La.App. 2d Cir.), writ denied, 503 So.2d 481 (La.1987); Hills v. Skate Country, Inc., 430 So.2d 1035 (La.App. 4th Cir.), writ denied, 438 So.2d 568 (La.1983); Hyland v. Durr, 212 So.2d 158 (La.App. 4th Cir.), writ denied, 214 So.2d 715 (La.1968). Therefore, in the case before the court, the plaintiff must show that the defendant's negligence resulted in the injury sustained.
In trying to prove negligence, the plaintiff presented two distinct theories in brief as to where the "toe stop" came from and who was responsible for it's presence on the floor. First, he alleges that the toe stop fell off the rented skate that he was wearing. His alternative theory is that the "toe stop" came off someone else's skate.
Concerning the first theory, that the "toe stop" fell off his rented skate, Mr. Perron argued at trial that the defendant was negligent because it failed to keep property in its control in good working order. Perron alleged that Skate Country did not provide proper maintenance of its skates because if his rented skate had been properly maintained the "toe stop" would not have come off during regular use.
To meet his burden of proof, the plaintiff had to prove the following: (1) the property which caused the damage was in the custody of the defendant; (2) the property was defective because it had a condition that created an unreasonable risk of harm to persons on the premises; and (3) the defect in the property was a cause-in-fact of the resulting injury. Madden v. Saik, 511 So.2d 855 (La.App. 4th Cir.1987). (Citations omitted.)
Under this first theory, Mr. Perron had to show that the "toe stop" came off of his shoe as he alleged in the accident report. The only eyewitness testimony to the accident was Mr. Perron's narration of his fall. His nephew, who found the "toe stop" and gave it to his uncle, did not actually see the accident. When he left the skating rink after the accident, Mr. Perron took the "toe stop" with him, after returning the rented skates, without telling any Skate Country employee of his accident. Though the testimony is inconclusive, after the plaintiff presented some evidence that the property which caused the damage was in the control of the defendant, the burden of proof shifted to Skate Country to rebut that evidence.
*264 Skate Country successfully rebutted plaintiff's case when Mr. Snellstrom, the manager, testified that the skates were checked immediately following Mrs. Perron's telephone call reporting the accident. Snellstrom testified that he and his employees checked all skates in the defendant's size and in one size above and below. They found no missing "toe stop." He also testified as to the routine maintenance procedures undertaken by Skate Country to insure that the skates were in good working order.
The plaintiff offered no additional proof that the "toe stop" came off of his own rental skate. In fact, Mr. Perron admitted that the "toe stop" came off of a juvenile's skate. Thus, this court finds that the plaintiff did not successfully meet his burden of proof of proving that the "toe stop," which allegedly caused him to fall, came off of his own rented skate. Additionally, he did not prove that Skate Country was negligent in its maintenance procedures.
The second theory advanced by Mr. Perron in brief is that Skate Country was negligent in failing to keep the floor free of foreign objects. The plaintiff contended that the "toe stop" came off the skates of another person who was skating at the same time. This argument is based on the testimony of Jose Santana, the defendant's assistant manager, who was in charge of the rink at the time when the plaintiff's accident occurred. He testified that the `toe stop', exhibited to him at his deposition by plaintiff's counsel, was possibly from a juvenile skate and of the commercial quality and type used by Skate Country. However, there was no proof offered by the plaintiff that this "toe stop" shown to the witness was from a Skate Country's skate. Testimony confirmed that skaters who owned their individual skates used the facility without submitting to an individual inspection of their skates. Because Skate Country would not be responsible for defective shoes of visitors, the issue in this scenario would be whether Skate Country was negligent in not keeping objects off of the floor. The plaintiff claims that Skate Country's negligence occurred when it failed to remove the "toe stop" before he fell.
It is well-established that the owner or person having custody of immovable property has a duty to keep such property in a reasonably safe condition; this person must discover any unreasonably dangerous condition on the premises and either correct the condition or warn potential victims of its existence. Carter v. Board of Supervisors of Louisiana State University, 459 So.2d 1263, 1265 (La.App. 1st Cir.1984). This court has found that the duty of a landlord or occupier to warn of any unreasonably dangerous condition is not to insure against the possibility of an accident on his premises, but rather to act reasonably in view of the probability of injury to others. Madden v. Saik, 511 So.2d 855 (La.App. 4th Cir.), writ denied, 514 So.2d 131 (La.1987). Thus, the defendant owed the plaintiff the duty to keep the skating floor in a reasonably safe condition.
In the case at bar, we find that Skate Country did not breach this duty. Defendant was able to show that there were safety measures in place to keep the skating floor in reasonably safe condition. There was testimony that the floor had been swept fifteen minutes before the morning session began. Additionally, the defendant proved that during the skating session, an employee who acted as a floor guard was responsible for the safety of the skaters. His duties included checking the floor for foreign objects and removing those objects when they were discovered. The record reveals that the use of one floor guard for the number of people on the floor was well within the accepted standard. Both the manager and the floor guard testified that the first duty of the floor guard was to insure a safe skating floor and that the floor guard on the day of the injury was performing that task. Mr. Santana testified that, if a "toe stop" was on the floor, it would be visible because it was bright orange on a blue floor. However, the floor guard who testified claimed that there was no "toe stop" present on the floor on the day of the accident.
*265 These facts were not disputed at trial. Rather, the trial court concluded that the procedures employed by Skate Country were within reason, but held the defendant liable anyway based on his other finding that the "toe stop" on the floor had simply escaped the attention of the floor attendant. This court finds that reasoning contradictory with the trial court's expressed intention not to apply strict liability. The trial court, in essence, made the defendant the insurer of the patrons' safety, a standard that this court has not been willing to impose.
The plaintiff would have this court hold the defendant to the standard of care imposed on store owners in McCardie v. Wal-Mart Stores, Inc., 511 So.2d 1134 (La. 1987). This standard, first enunciated in Kavlich v. Kramer, 315 So.2d 282 (La. 1975), shifts the burden of proof to the owner of the store to exculpate itself from the presumption of negligence once the plaintiff proves there was a foreign substance on the floor that caused the plaintiff to fall and sustain injury. The plaintiff is then relieved of his burden to show the defendant's actual or constructive knowledge of the foreign substance. Brown v. Winn-Dixie Louisiana, Inc., 452 So.2d 685 (La.1984).
This reasoning is faulty in two ways. First, the result of relieving the plaintiff of the burden of proving scienter is the imposition of a theory of strict liability on the defendant. La.C.C. art. 2317; Kent v. Gulf State Utilities Company, 418 So.2d 493 (La.1982). This, as previously noted, may not be imposed on an amusement facility. Secondly, this added burden placed on store owners was specific to retail stores where displays may keep customers from focusing on the surface on which they walk. Kavlich v. Kramer, 315 So.2d 282 (La.1975). Therefore, this shifting burden of proof will not be applied to the defendant in this case.

DAMAGES
Because of our holding on the issue of liability, we pretermit discussion of the damage issue.

CONCLUSION
Because this court finds that the plaintiff failed to prove the defendant negligent, we reverse the trial court's ruling and dismiss the plaintiff's case against defendant, Skate Country, Inc. at plaintiff's cost.
REVERSED.