712 So.2d 622 (1998)
Eleanor L. MAY
v.
MITCHELL BROTHERS, INC. and Homestead Insurance Company.
No. 97 CA 1270.
Court of Appeal of Louisiana, First Circuit.
May 15, 1998.
*623 Rodney N. Erdey, Livingston, for Plaintiff-Appellee.
Frederick H.N. Dwyer, Mandeville, for Defendants-Appellants.
Before LOTTINGER, C.J., and SHORTESS and FOGG, JJ.
SHORTESS, Judge.
Seventy-four-year-old Eleanor L. May (plaintiff) was injured by a ricocheting softball while watching a milk-bottle-toss game at the Livingston Parish Fair. She sued the fair operator, Mitchell Brothers, Inc.[1] (Mitchell), and its insurer, Homestead Insurance Company (collectively, defendants). After a bench trial, the court found plaintiff's damages totaled $50,000.00. It found plaintiff and Mitchell were both negligent and apportioned the fault 20% to plaintiff and 80% to Mitchell. Defendants appeal, alleging that the trial court erred in finding Mitchell negligent and, alternatively, that the fault assessed Mitchell and the quantum awarded were both excessive.[2]
The trial court, in brief reasons for judgment, stated:
Having carefully reviewed the facts and the evidence, this Court finds that the defendant Mitchell Brothers had a duty to operate its game booths in such a manner that they would not pose a danger of injury to [passersby]. This Court further finds that the defendant breached this duty by failing to provide protection from catapulted objects, whether from the erection of a protective device, or from the placement of the booth such that catapulted objects would not pose a danger to [passersby].
Defendants contend, however, that this incident was improbable, unusual, and unforeseen and that plaintiff failed to show how Mitchell acted unreasonably, what precautions could or should have been taken that would have prevented such an incident, or what actions by Mitchell were negligent.
Plaintiff was strolling the midway of the Livingston Parish Fair and had stopped at the milk-bottle-toss game because she wanted to talk to a friend who was working in the booth. The game involves throwing a softball at three metal milk bottles sitting on a stand eighteen to twenty inches high. The bottles are six to eight feet away from the thrower. The object of the game is to knock over the bottles and win a prize.
Deltus Mitchell, owner of Mitchell, testified the game is enclosed in a booth that has three walls and a top. He stated the milk-bottle-toss game had been at the Livingston Parish Fair for twelve to twenty years. To his knowledge, no one had ever been injured by a ricocheting ball from this game. Plaintiff presented no evidence showing a protective device would have been feasible or that some other placement of the booth would have prevented her injury.
Louisiana law is well settled that the owner or operator of an amusement facility is not the insurer of the safety of its patrons but is liable for injuries received by them only if guilty of negligence.[3] It is not required to protect its patrons against every possible danger or hazard.[4] The mere fact that an accident occurs, absent a res ipsa loquitur situation, does not give rise even to a presumption of negligence.[5] The plaintiff *624 has a duty to prove by a preponderance of the evidence that the defendant had a duty to protect plaintiff from injury and that the defendant breached that duty.[6]
Plaintiff's only evidence that balls were prone to ricochet from a milk-bottle-toss game was the testimony of her friend, Estelle Carpenter. Carpenter testified she was once chair of the games committee for an elementary-school field day. She stated the milk-bottle-toss game at the school carnival had a problem with balls ricocheting and hitting the students, and it was discontinued because of that danger. She also testified, however, that the booth was dissimilar to the one involved in this incident. The only thing she remembered about the booth involved herein was that there were milk bottles on a wooden platform.
Carpenter testified she was with plaintiff when the accident occurred. They stood in front of the booth about five minutes before plaintiff was struck. She stated she saw more than one ball ricochet out of the booth while they stood there, but she did not think it was dangerous at the time. Plaintiff testified, however, that she did not see any balls come out of the booth before the accident. The trial court found plaintiff had foreknowledge that balls were occasionally ejected from the booth.
Before the 1988 supreme court case of Murray v. Ramada Inns,[7] this case would have been decided under the legal fiction of assumption of the risk. Under that doctrine, plaintiffs were considered to have implicitly consented to injuries that occurred at amusement parks or while spectators at sporting events unless they could show the defendant was careless or negligent in failing to take reasonable precautions.[8] In Murray, the supreme court banished the term "assumption of the risk" but noted its decision did not mean the result reached in sports-spectator and amusement-park cases was incorrect. The court noted that in those cases, the courts applied assumption-of-the-risk terminology while simultaneously recognizing the defendant was not negligent because his conduct vis-à-vis the plaintiff was not unreasonable.[9] The court stated these types of cases turn on their particular facts and may be analyzed in terms of duty/risk.
The court noted the same analysis applies in other cases where it may not be reasonable to protect the plaintiff from all of the risks associated with a particular activity. As an example, the court cited Bonanno v. Continental Casualty Company,[10] in which an 84-year-old plaintiff was injured when she was jostled or fell when someone dressed as the devil appeared, scaring the haunted-house patrons. The court stated the plaintiff "had to realize that the very nature of the attraction was to cause patrons to react in bizarre, frightened and unpredictable ways."[11]
Duty is an obligation to conform to a standard of conduct associated with a reasonable person in like circumstances. Whether a duty is owed is a question of law.[12] In determining whether Mitchell owed a duty to plaintiff in this case, the court had to determine whether a reasonably prudent carnival operator would have or could have erected some sort of protective device or placed the booth in such a manner that catapulted objects would not pose a danger to spectators. The court found Mitchell had such a duty, but defendants contend this finding was legal error.
Failure to take every precaution against all foreseeable injury to another does not necessarily constitute negligence. Negligence requires the risk be both foreseeable and unreasonable. Failure to take a particular precaution to guard against injury to another in connection with a risk constitutes *625 negligence only when it appears such a precaution would have been undertaken under the circumstances by a reasonably prudent individual. Ordinary care does not require that one anticipate unusual and improbable, although entirely possible, happenings.[13] The operator is required only to exercise that degree of care commensurate with foreseeable dangers inherent under the circumstances.[14]
In Pitre v. Employers Liability Assurance Company, a nine-year-old boy was killed when he was struck on the temple by a teenager who was winding up to pitch at a concession booth similar to the one involved herein. His parents sued the fair operator, alleging precautions should have been taken to separate the participants and the spectators. The court found the operator had no duty to do so, stating:
The national popularity of baseball as a sport warrants the conclusion that even a nine and one-half year old lad is aware of such danger as attends his remaining in proximity to persons throwing baseballs. Although the type of accident in question is one that was perhaps foreseeable, and certainly of a type possible, its probability of occurrence was not so great as to render the operators negligent for failing to take measures to prevent its happening.... [F]ailure to take precautions does not constitute negligence unless the danger is both foreseeable and unreasonable.[15]
The scant evidence in the record shows this type of accident was possible, perhaps foreseeable, but certainly not probable. We find the precautions taken by Mitchell, i.e., enclosing the booth on the top and three sides, were reasonable. Neither plaintiff nor the trial court suggested a reasonable method of preventing ricocheting balls while still giving the game participants an opening through which to throw them. A seventy-four-year-old who had been attending the fair for years must have been aware of the dangers of remaining in proximity to a game booth in which balls were thrown.
There are certain risks and elements of danger to participants and spectators in almost all sports and amusements, from haunted houses[16] to roller skating[17] to football scrimmages[18] to ball-toss games at carnivals.[19] The trial court's finding that Mitchell had a duty to operate its booth in such a manner that spectators could not be injured was the erroneous imposition of a strict-liability standard. We find the trial court committed legal error in finding that the danger presented under the facts and circumstances of this case was unreasonable. Thus, we must reverse the trial court's finding that Mitchell was negligent.
For the foregoing reasons, the judgment of the trial court in favor of plaintiff, Eleanor L. May, is reversed, and judgment is rendered dismissing plaintiff's suit, at plaintiff's cost.
REVERSED AND RENDERED.
NOTES
[1] The company was doing business as Mitchell Brothers Amusements. Deltus Mitchell, the owner, testified the proper name of the corporation was Mitchell Brothers and Son, Inc.
[2] Plaintiff contends in brief that this court should reapportion 100% of the fault to Mitchell. However, plaintiff failed to cross-appeal or answer defendants' appeal.
[3] Perron v. Ambassador Ins. Co., 541 So.2d 261, 263 (La.App. 4th Cir.), writ denied, 543 So.2d 5 (La.1989); Baker v. Thibodaux, 470 So.2d 245, 248 (La.App. 4th Cir.1985); Hyland v. Durr, 212 So.2d 158, 161 (La.App. 4th Cir.), writ denied, 252 La. 886, 214 So.2d 715 (1968).
[4] Jones v. Alexandria Baseball Ass'n, 50 So.2d 93, 94 (La.App. 2d Cir.1951).
[5] Pitre v. Employers' Liability Assur. Corp., 234 So.2d 847, 851 (La.App. 1st Cir.). writ denied, 256 La. 617, 237 So.2d 398 (1970).
[6] Id.
[7] 521 So.2d 1123 (La.1988).
[8] Id. at 1134-1135; Jones, 50 So.2d at 94.
[9] Murray, 521 So.2d at 1134-1135.
[10] 285 So.2d 591 (La.App. 4th Cir.1973).
[11] Id. at 592.
[12] Walker v. Phi Beta Sigma Fraternity (RHO Chapter), 96-2345, p. 6 (La.App. 1st Cir. 12/29/97), 706 So.2d 525, 528; Rhodes v. Winn-Dixie Louisiana, Inc., 93-1848, pp. 4-5 (La.App. 1st Cir. 6/24/94), 638 So.2d 1168, 1170.
[13] Pitre, 234 So.2d at 853.
[14] Id.
[15] Id.
[16] Bonanno, 285 So.2d 591.
[17] Perron, 541 So.2d 261.
[18] Colclough v. Orleans Parish School Board, 166 So.2d 647 (La.App. 4th Cir.1964).
[19] Pitre, 234 So.2d 847.